DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

NOVEMBER TERM, 1892.

GEORGE S. WATSON, PLAINTIFF IN ERROR, v. THE CAMDEN AND ATLANTIC RAILROAD COMPANY, DEFENDANT IN ERROR.

55   125
55   215
55   125
58   201
55   125
61   608

A passenger, entitled to safe transportation over a railroad and ferry connecting therewith, upon invitation of the employes of the railroad company managing the ferry, passed from a boat by a way upon the ferry bridge provided for animals and vehicles. As he was so doing a runaway horse, belonging to the railroad company, careering at random about the ferry-house, bolted over a bow, which aided in the support of the ferry bridge, into the way where the passenger was and injured him. *Held* that, by being in the way indicated, the passenger was not guilty of negligence which contributed to his injury.

On error to the Supreme Court.

On the 22d of November, 1889, the plaintiff in error was a passenger entitled to safe transportation by the Camden and Atlantic Railroad Company from the city of Philadelphia to

125

the village of Berlin, in this state. He crossed the Delaware river upon a ferryboat operated by the defendant company in connection with its railway, reaching the Camden side at about six o'clock in the evening. The ferryboat was constructed with two completely enclosed passenger cabins, one on each side of the boat, adjoining which were open ways for animals and vehicles. In the centre of the boat the engine was enclosed. Each end of the boat was open and divided into two passenger exits and one animal and vehicle exit by string-pieces, so that by merely stepping over a string-piece a passenger could cross from either passenger exit into the vehicleway. At the front of the boat there were three iron gates, one to each passenger exit and one, a larger gate, to the vehicleway. Across the latter way, several feet behind the large iron gate, was a chain, used when raised to keep back animals and wagons, so that they would not crowd upon the iron gate.

It was customary for passengers to stand in the space between this chain and the large gate, and when the boat landed, to pass off the boat through the large gate. In recognition and encouragement of this practice, which expedited the discharge of the boat and facilitated the dispatch of the railway trains, it was the custom of the employes of the company to open the large iron gate and permit passengers to leave the boat through it, and as they did so to afford them security from the animals and vehicles by keeping the chain raised until they were well up the ferry bridge.

The bridge was constructed with three passageways corresponding to those of the boat, one on each side for passengers only and one in the centre for animals and vehicles, the latter being habitually used, as stated, by passengers.

On the evening in question the northerly passage of the ferry bridge was obstructed by rubbish so that it was not in use. There were no animals or vehicles on the boat, and the chain was not stretched across the vehicleway. The boat was crowded with passengers, who stood in both the southerly passenger exit and the vehicleway, awaiting the landing.

When the boat was made fast the employes of the company moved a wooden slide from the bridge to the boat in the vehicleway, and then, as usual, the iron gates on the boat were opened, both the southerly passengerway gate and the gate of the vehicleway.

The plaintiff was among the first to pass from the boat up the vehicleway of the bridge. As he went up that way an uncontrolled horse belonging to the defendant company, that had escaped from its stableyard some distance from the ferry, ran wildly and at full speed through an· open gate into the ferry-house. There he took an irregular course, which brought him to the end of one of two bows which supported the ferry bridge and divided its three passages, over which he sprang into the vehicleway, where he struck and injured the plaintiff. The advent of the horse was so quick that it was impossible for the plaintiff to form and execute a plan of escape.

Upon this state of facts the trial judge non-suited the plaintiff, stating this as his reason for so doing :

" I cannot see my way clear to say that a carrying company is responsible to persons who take that part of the gang-plank as against accidents occurring from incidents of this character. I do not see, if that were to be the rule at law, how a carrying corporation could ever, by any amount of excessive care in the provision for the safety of passengers, insure themselves against passengers who choose to go into those places."

The judgment now questioned was entered upon *postea* from the Circuit.

For the plaintiff in error, *John W. Wescott.*

For the defendant in error, *Samuel H. Grey.*

The opinion of the court was delivered by

THE CHANCELLOR. The proofs satisfactorily establish that the plaintiff was practically invited by the defendant's employes to pass from the boat by the vehicleway. The northerly passenger exit was closed. The southerly exit was

narrow. When the boat was made fast to the bridge, although there were no animals or vehicles upon it, a gang-plank or slide was drawn to it from the bridge, and the vehicleway gate, behind which there was a waiting crowd, was thrown open as though a signal to the crowd to pass off that way.

The plaintiff was among the first of those who availed themselves of this offered exit.

The use for which the way he took was designed, was the transfer of controlled animals and vehicles to and from the boat. Passage over it brought to him knowledge of its customary use and suggested a prudent watchfulness against the dangers attendant upon that use. In other words, it was a place of obvious danger from a certain use, against which it was the plaintiff's duty to guard, and the invitation to pass that way did not absolve him from the reasonable performance of his duty in this respect. But the duty did not extend to dangers from causes *ab extra* that use, such as the rapid, uncontrolled career of a wild horse, whose course was undirected, irregular and regardless of any way, and who, as he madly ran at random, happened to spring over the end of the bow to the place where the plaintiff was injured. We think that it was not the plaintiff's duty to anticipate use of the driveway by a runaway horse of the defendant, and, speaking with more particularity, to anticipate the bolting of such a horse over the end of the bow into the driveway. I am satisfied that this case is within the reasoning of the well-considered case of the *New York, Lake Erie and Western R. R. Co.* v. *Ball*, 24 *Vroom* 283, which cannot fail to elicit approval.

It is not perceived that there was negligence upon the part of the plaintiff which contributed to the injury of which he complains. Hence, we are of opinion that he was improperly non-suited.

The judgment below must be reversed, that a *venire de novo* may issue.

*For affirmance*—None.

26 *Vroom.*   United New Jersey R. R., &c., Co. v. Jersey City.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH.   11.