THE STATE, THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY AND THE PENNSYLVANIA RAILROAD COMPANY, PROSECUTORS, v. THE MAYOR AND ALDERMEN OF JERSEY CITY AND PATRICK H. O'NEILL, COLLECTOR OF JERSEY CITY.

1. The lands known as "Harsimus Cove," in Jersey City, described in an act entitled "An act to enable the united railroad and canal companies to increase their terminal facilities in Jersey City," passed March 30th, 1868 (*Pamph. L.*, *p.* 551), and by virtue of said act acquired by said companies, can only be subjected to taxation to the extent prescribed in such act, unless the same be used for other than railroad, canal, depot, transhipping or landing purposes; and if the city authorities of Jersey City desire to subject it to general taxation, for local and municipal purposes, the burden rests upon them to show that it is used for other purposes than those named in the act.
2. So long as it continues incident to, and reasonably necessary or convenient for such purposes as those to which the act of the legislature devoted it, and not actually used for other purposes, the exemption from general taxation remains.

On *certiorari.*

Argued at November Term, 1894, before Justices DIXON, MAGIE and LIPPINCOTT.

For the prosecutors, *James B. Vredenburgh.*

For the defendants, *John A. Blair* and *Spencer Weart.*

The opinion of the court was delivered by

LIPPINCOTT, J. This writ of *certiorari* brings up for review the proceedings of the commissioners of adjustment of

Jersey City, appointed under an act entitled "An act concerning the settlement and collection of arrearages of unpaid taxes, assessments and water rates, or water rents, in cities of this state, and imposing and levying a tax, assessment and lien in lieu and instead of such arrearages, and to enforce the payment thereof, and to provide for the sale of lands subjected to further taxation and assessment," approved March 30th, 1886 (*Pamph. L., p.* 149), by which the commissioners adjusted and imposed a local tax on certain lots of land belonging to the prosecutors situate in the city of Jersey City.

The questions raised and discussed involve the legality of the original imposition of the tax by the city authorities, as well as the validity of the proceedings of the commissioners in adjusting the same.

These lands belonging to the prosecutors are known as lots numbers 9 to 14, inclusive, in block 177; and, also, lot B, block 15, upon the city tax assessment map. The lots 9 to 14, in block 177, have been assessed for city, municipal and county taxes for the years 1868 and 1869, for the sum of $249.35; and lot B, block 15, has been assessed for the same purposes for the years 1884 to 1892, inclusive, for the sum of $11,175.96, and the adjustment was made for these sums on the basis of the original taxation, without any interest added.

These lots of land all lie within the boundaries of the Harsimus Cove tract or grant of land, as acquired by the prosecutors from the state by virtue of the provisions of an act of the legislature entitled "An act to enable the United Railroad and Canal Companies to increase their terminal facilities at Jersey City," passed March 30th, 1868. *Pamph. L., p.* 551. By the preamble of this act, the tract is recited as having been acquired by the prosecutors "for the accommodation of the business of the companies, more room for depots, storage and other railroad and canal purposes," and by the first section of the act it is provided that the acquisition is "requisite and necessary for the transaction of their business." By the second section of the act it is provided that " said

united companies, their officers and agents, shall have supervision and control of the wharves, piers, canals, buildings and other improvements which they may erect on the said property, and may charge such wharfage and other rates for the use thereof as the said directors may deem reasonable, or as may be agreed upon with the parties desiring to use the same; and that all acts and parts of acts heretofore passed, which limit the amount of land that may be held by the united companies, or either of them, for the purposes of their charters respectively, or which subjects such lands, if exceeding a certain quantity to any other tax than that which is imposed upon the said companies respectively by their respective charters or acts of incorporation, are hereby repealed; *provided, however,* that such parts of said property, and the improvements to be made thereon as shall be used for other than railroad, canal, depot, transhipping or landing purposes (but no other portions thereof) shall be subject to local and municipal taxation."

Under this act, whether these lands be taxable for the local and municipal purposes of Jersey City, depends upon whether they are used for other than railroad, canal, depot, transhipment or landing purposes, for if only so used then they are clearly exempt from such taxation. Now, as to a portion of these lands, that is, the lots 9 to 14, in block 177, there appears to exist no question requiring more than mere formal determination. It does not clearly appear in the testimony in this case to what uses these lots are devoted, but at the outset it is conceded by the city that the taxes on these lots for the years 1868 and 1869 have heretofore been the subject of judicial inquiry in this court, and that their continuance on the tax records of the city has been an error, and their consideration by the commissioners of adjustment an inadvertence, growing out of a mistaken certification to them of these taxes as arrearages by the city collector. At the November Term, 1876, a decision of this court was rendered that these lots were not used during the years 1868 and 1869 for other than railroad, canal, depot, transhipping or landing purposes, and, therefore, for those

years they were free from taxation, and that by rule of this court of that term these taxes were set aside. Therefore, there were no arrearages for those years and none for the commissioners to adjust, and the act to which reference is made, under which they were appointed, conferred no power upon them in relation to these taxes. It gave them no power to levy taxes or to make original assessments. *In re Commissioners of Elizabeth*, 20 *Vroom* 488.

The action of the commissioners as to lot B, in block 15, was based on the fact that there appeared upon the tax record book of the city collector an arrearage of taxes thereon for the years 1884 to 1892, inclusive, amounting to the sum of $11,175.96.

This lot B in question, by the evidence, mostly remains land under water, as it existed at the date of conveyance by the state to the United Companies. A small portion of the westerly end thereof is above high tide, and on that portion of it the Erie Railroad Company, by permission of the prosecutors, has a track laid for the purpose of transhipping cattle from their trains of cars, through the cattle pens, into an abattoir established to the south of this property by the Central Stock Yard and Transit Company.

The abattoir of this company in question does not stand upon lot B, the property in question, but upon other property leased from the United Companies, and upon which local taxes are assessed and paid. The abattoir property stands about ten feet south of the southerly line of the lot B in question here. The portion of lot B next to the abattoir is used to some extent for the purpose of transhipment of cattle to boats, both alive and dead, which are delivered from the cars of the prosecutors into the pens connected with the abattoir. The whole plot is used for no other than railroad, canal, depot, transhipment and landing purposes, and, perhaps, not through its entire extent for these purposes, but for no other.

Unless it be taxable under the act entitled "An act for the taxation of railroad and canal property," passed April 10th, 1884 (*Pamph. L., p.* 142), this property is exempt from any local taxation, and is taxable only by the state board of

assessors under the eighteenth section of the charter of the New Jersey Railroad and Transportation Company, which was incorporated by act of March 7th, 1832 (*Pamph. L., p.* 96), which provides for a special tax to be paid into the state treasury yearly and every year.

In the case of the *United Railroad and Canal Co.* v. *Commissioners of Railroad Taxation,* 8 *Vroom* 240, the act of 1868 was construed, and in that case it was held that the conveyance by the state of the lands described in the act was not a grant of a franchise, nor was it a charter within the sixth section of the General Corporation act. The thing granted was held to be the premises described, with all the rights and privileges annexed, and that the exemption from general taxation was one of the rights which gave value to the thing or estate granted; that, by the operation of the grant, this right annexed to the land passed as an appurtenance to the subject granted; it is a part of the thing granted, and cannot be modified or repealed without the consent of the grantee. In other words, so far as this property is concerned, there exists in behalf of the grant an irrepealable contract of exemption on the subject of taxation.

These lands, therefore, can only be subjected to taxation in the manner and to the extent prescribed in the act of 1868, which is, in all respects, a public act, the provisions of which the local taxing authorities must take notice, and if, under this grant of 1868, any other than the taxation therein provided is to be sustained, the burden is upon the taxing authorities to show that it is used for other than the purposes specified in this act.

In this case the evidence is entirely wanting in probative force, in the direction of other uses; the evidence reveals that it has not, at any time, been used for any other purposes. It is urged that, because it is used by the Central Stock Yards and Transit Company for the transhipment of cattle received as consignee of the cattle transported to this abattoir by the cars of the prosecutors, therefore the use provided by the act has been abandoned. This conclusion is not sustained,

but even if it was, it could have no force, for its use is one within the limits of the grant, a use of the character provided for the benefit, perhaps, of the consignee, but in the business of the railroad, a part of which is the delivery of its freight to its patrons. But this subject need not be followed. The rule laid down in this court in the case of the *Pennsylvania Railroad Co.* v. *Jersey City*, 20 *Vroom* 540; *S. C., affirmed* 22 *Id.* 564, disposes of this objection. In that case a grain elevator was constructed upon the lands granted by this same act of 1868, for the purpose of transhipment and relieving the cars of their lading, and if the grain passing through the elevator was not called for by the consignee, and it was retained, a charge was made by the railroad company for storage. The insistment was that this was a use other than those mentioned in the act. The court, citing with approval the case of *State, New Jersey Railroad Co., pros.*, v. *Hancock, Collector*, 6 *Vroom* 537, said: "If, however, any doubt existed as to the meaning of the words 'for railroad purposes,' as used in the exemption clause of the act of 1868, it would be removed by reference to the preamble of the act. The preamble recites 'that the United Companies require for the accommodation of their business more room for depot, storage and other railroad and canal purposes at Jersey City.' Thus, the legislature expressly recognized the appropriation of the land to storage as a use of it for railroad purposes. At the time of the passage of this act the United Companies had constructed their road to Jersey City. It was not for the construction of the road that the grant was made, but it was, as expressly set forth, to give greater facilities for the accommodation of the business of the road. Room for depots and room for storage were classed together as necessary railroad uses." *State* v. *Jersey City*, 12 *Vroom* 471; *State* v. *Binninger, Collector, &c.*, 13 *Id.* 528.

It is further contended by the defendants that this property is subject to taxation by the local authorities of Jersey City, for local municipal purposes, under the act of 1884 (*Pamph. L., p.* 142), to which reference has already been made. This

can only be on the ground that if the land is not actually used for railroad or canal purposes it shall be assessed. But the difficulty with this contention is that the act of 1868 exempts it from local taxation unless it be used for other than the purposes described by the act. The act of 1868 has been held to be a contract between the state and the United Companies, by which, for a stipulated price, lands were conveyed to the companies upon certain terms and conditions therein specified. The state has accepted the payment of the full consideration from its grantee, and is not now in a position either to repudiate, or to permit any of its political subdivisions to repudiate, any of the terms of the contract which enures to the benefit of the grantee. *Pennsylvania Railroad Co.* v. *Jersey City*, 20 *Vroom* 545. Aside from the question whether the land is not now used for railroad purposes, which I think the evidence fairly establishes, yet if held vacant, it is still within the exemption of the terms of the grant, which the state is not by subsequent legislation at liberty to extinguish. The learned Chancellor, in the case of the *United New Jersey Railroad, &c., Co.* v. *Jersey City*, in the Court of Errors and Appeals of this state, 26 *Vroom* 125, 131, said : "It is the land which the legislature in its wisdom has deemed to be reasonably necessary to answer the ordinary and emergent uses of a railway and ensure the continued and convenient and safe accommodation of the public. Its dimensions are limited by the law which devotes it to a special purpose." It being within the legislative grant, and the exemption therein provided, it cannot be said that because it is not actually devoted to the construction, maintenance and management of the railroad, that it is used for other purposes, or is not used for railroad purposes, and thus become the subject of local taxation. So long as it remains incident to and reasonably necessary or convenient for such purposes, and not actually devoted to other purposes, the exemption remains.

It is also contended that the prosecutors are in *laches,* and therefore have lost their remedy. The commissioners of adjustment took cognizance of these alleged matters of

arrearages on October 29th, 1888, and held the same under consideration until November, 1893, at which time they made and filed their report. This report was not confirmed until December 13th, 1893. I do not think the prosecutors were in *laches* in not obtaining this writ pending the consideration of these taxes by the commissioners. The prosecutors had the right to assume that the judgment of the commissioners would be in their favor. The *certiorari* was sued out on March 17th, 1894, which was about three months after the confirmation of the report, and before any further proceedings were taken by the city in the enforcement of the taxes. The conclusion is that the prosecutors were in no *laches*.

The taxes brought up by the writ, with the proceedings of the commissioners of adjustment relating thereto, may be set aside, with costs.