IN THE MATTER OF THE APPLICATION OF THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY FOR A SUMMARY DETERMINATION AS TO CERTAIN LANDS IN JERSEY CITY, WHICH HAVE BEEN ASSESSED BY THE LOCAL AUTHORITIES OF THE TAXING DISTRICT OF JERSEY CITY, AND ALSO ASSESSED BY THE STATE BOARD OF ASSESSORS, AS PROPERTY USED FOR RAILROAD PURPOSES.

Argued February 20, 1907—Decided November 26, 1907.

In a proceeding to determine the character of lands, located within a city, that had been doubly taxed for the purposes of taxation, pursuant to section 28 of the revised act for the taxation of railroad and canal property (*Pamph. L.* 1888, *p.* 269; *Gen. Stat.*, *p.* 3324), it appearing that the property in question was a ferry-house, being part of a railroad terminal located at tidewater on the shore of a navigable river, in connection with which the companies had established and were operating a ferry under the authority of sections 19 and 20 of the act concerning railroads (*Rev.*, *Pamph. L.* 1903, *pp.* 643, 646; *Gen. Stat.*, *p.* 2647), it was *held*—

(1) That so far as the lands and buildings in question are incident to and reasonably necessary or convenient for the purposes of the terminal, and not actually used for other purposes, they were property used for railroad purposes, and only taxable by the state board.

(2) That this principle of exemption from local taxation must be extended to the ferry-house, or such parts thereof as are reasonably necessary to the carrying on of such ferry for the transportation of the passengers and freight of the companies arriving by their trains; that such use becomes a railroad purpose under the said act.

(3) That the use of a portion of the second floor of the ferry-house, adjoining the waiting-room, for the purposes of dining-room and restaurant did not subject such portion to local taxation, it appearing that it was mainly devoted to the patronage of travelers upon the trains and the companies' employes, not more than ten per cent. of the patronage coming from the general public.

(4) That so much of the lower floor of the ferry-house as was mainly devoted to the accommodation of local passengers, trucks and vehicles from the city and vicinity entering the ferry-boats at that point was subject to local taxation; that as to such part the city assessment should stand, but as to the rest of the building should be abated in favor of the assessment of the state board.

On rule to show cause.

Before Justices FORT, HENDRICKSON and PITNEY.

For the applicants, *James B. Vredenburgh.*

For the mayor and aldermen of Jersey City, *Robert Carey* and *George L. Record.*

For the State of New Jersey, *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

HENDRICKSON, J.    This is an application by the United New Jersey Railroad and Canal Company for a summary determination of the character of certain lands of the applicants located within the city of Jersey City for the purposes of taxation, which have been assessed by the local authorities of the city and also assessed by the state board of assessors as property used for railroad purposes, pursuant to the authority of section 28 of the revised act for the taxation of railroad and canal property. *Pamph. L.* 1888, *p.* 269; *Gen. Stat., p.* 3324. This dispute arises over the assessments for the year 1905, made upon the companies' passenger terminal and ferry-house at the foot of Exchange place in Jersey City, which had for the first time been locally assessed since the appointment of the state board in 1884, who thereafter have assessed it as property used for railroad purposes. The companies have during this period been operating this ferry for the transportation of persons and property across the Hudson river in connection with their trains, pursuant to the authority of the nineteenth section of the act concerning railroads. *Rev.* 1903, *pp.* 645, 656; *Gen. Stat., p.* 2647, ¶ 40. This section gives to a railroad company, whose terminus may be on the shore of any river or navigable water of this state, authority "to establish and operate ferries for the transportation of persons and property on or across the same, subject to the rates of fare and tolls provided in this act on railroads,"

&c., "and to buy or build vessels and boats and do all things necessary or convenient to carry on such ferry, or may contract with other ferry companies for the transportation of the passengers and freight of such railroad company." By the next section they are empowered "to purchase or hire boats, vessels or barges and any wharves, piers, docks, landings and buildings situated at or near any terminus of its road capable of being of use in the transportation of freight or passengers," &c.

The whole of the terminal property and buildings, including the lands in front of it under water, is included in the assessment of the state board. The building known as the ferry-house is a two-story frame building with concrete walls. The upper story consists of a lobby which runs parallel with the river, on the river side of which there are ferry-slips. It is separated from the train-shed by an iron fence with gates through which train passengers may pass to the various ferries. The same roof that covers the lobby covers also the general waiting-room, the restaurants, toilet-rooms and barber shop, all on the same level with the lobby. The lower floor of the ferry-house beneath the lobby is used principally by local passengers, wagons and trucks to the lower decks of the ferry-boats.

So far as the lands and buildings in question are incident to and reasonably necessary or convenient for the purposes of the terminal of the companies' railroad, and not actually used for other purposes, it is property used for railroad purposes within the meaning of the revised act for the taxation of railroad and canal property (*supra*), and is only taxable by the state board pursuant to that act. *United New Jersey Railroad Co.* v. *Jersey City,* 28 *Vroom* 563. This principle was recognized by the Court of Errors and Appeals in *United New Jersey Railroad Co.* v. *Jersey City,* 26 *Id.* 129. This much seems to be conceded by counsel for the city in the brief, who declare the assessment by the city to be substantially upon that portion of the terminal station which is used for ferry purposes and the land and structures which they allege are used for other than railroad purposes, to wit, dining-room and restaurant,

barber shop, toilet-rooms, &c.  We think the principle of exemption from local taxation, applied as above to the buildings as a railroad terminal, must be extended to the ferry-house or such parts thereof as are reasonably necessary to carry on such ferry for the transportation of the passengers and freight of the companies arriving upon their trains.  Such use becomes a railroad purpose under the act cited.  That this is the proper construction of the act may be inferred from the fact that it was passed as a supplement to the Railroad act, and its provisions were made "subject to the rates of fare and tolls provided in this act on railroads."  But it is contended for the city that the extensive use of the lower floor of the ferry building for local passengers and trucks from Jersey City and elsewhere, disconnected with the railroad traffic proper, should change its character for the purpose of taxation and should validate the city assessment thereon or a proportionate part thereof.  It is contended on the part of the companies that this ferry, when so carried on by a railroad company, is part of the railroad, and that when teams and local passengers come to this ferry they are passengers of the railroad and their transportation is a use of the property for railroad purposes.  But we are unable to construe this legislation as conferring such extensive powers upon the companies.  We think they are limited in their application to passengers and property coming over their roads.  The case shows that the lower floor of the ferry building is not exclusively used by the local traffic, but that all baggage, mail and express matter going over the railroad to and from New York and Brooklyn use solely this lower floor.  But it is contended for the city that, at any rate, the land and buildings in question, or part of them, is devoted to this large local ferry traffic, which it is contended is not a railroad use, the proportion of which to that of the railroad traffic proper is easily ascertainable by proof, and that for this reason the court should determine the property to be assessable both locally and by the state, in proportion to the respective uses as measured by the money receipts therefrom.  It is further contended that an ascertainable proportion of the receipts of the

business of the dining-room and restaurant on the second floor of the structure is derived from persons other than the patrons of the railroad company. The only evidence upon this subject was that produced by the companies, in the person of the steward of the restaurant, who had been acting six years in that capacity. His estimate was that about seventy per cent. of those who used the restaurant are railroad passengers, and of the remaining thirty per cent. twenty per cent. are railroad employes. The restaurant opens from the waiting-room and was operated by the companies. We are asked to apply the same principle to this part of the business. But so far as the dining-room and restaurant are concerned, we think they, like the waiting-rooms, toilet-rooms and barber shop, are reasonably necessary to the comfort and safety of the passengers upon the railroad and should be assessed as proper appendages of the terminal building. The decision of this court in *Central Railroad* v. *Bayonne,* 43 *Vroom* 86, sustains this view. It was there held, Mr. Justice Dixon delivering the opinion, that a plot occupied exclusively by the Pullman Parlor Car Company for storing ice and other articles used by that company in connection with its cars hauled over the road for the tranportation of passengers who chose to ride in parlor cars, the railroad company deriving no profit from the use of the property other than the accommodation afforded to its passengers, was used for railroad purposes. And we think the occasional and incidental patronage of the eating and other accommodations provided for the travelers upon the trains by others than such travelers is not sufficient to subject that part of the property to local taxation. See 12 *Am. & Eng. Encycl. L. (2d ed.)* 322.

Under a statute exempting from local taxation the depot grounds of railroad companies and property necessarily used in operating the road it was held by the Supreme Court of Wisconsin that it was not required, in order to sustain such exemption, that the property be used exclusively for railroad purposes, but that it was sufficient if that was clearly shown to be its principal use. It was held that a railroad eating and lodging-house not kept open as a general hotel for the whole

public, and necessarily maintained by the company for the accommodation of its passengers and employes, from whom the house derived nine-tenths of its business, was exempt from local taxation, though the company's tenant (not charged with rent) by whom it was conducted took the profits thereof, and although commercial travelers upon the road were entertained at the house for one or more days while transacting their business in that vicinity. *Chicago, Milwaukee and Saint Paul Railway Co.* v. *Crawford County Supervisors,* 48 *Wis.* 666; 5 *N. W. Rep.* 3. See, also, *State* v. *Betts,* 4 *Zab.* 555, 559; *Lehigh Valley Railroad Co.* v. *Newark,* 15 *Vroom* 323, 324.

With regard, however, to so much of the lower floor of the ferry-house beneath the lobby, which, as before stated, was mainly devoted to the accommodation of the local passengers, trucks and vehicles from Jersey City and vicinity in reaching the ferry for passage and incident thereto, this we think is subject to local taxation, and as to that part the city assessment should stand and the state assessment should be reduced accordingly. The remainder of the building and lands was properly assessed by the state board, and as to that part the city assessment must be abated or reduced so as to leave it untaxed by local authority.

In applying exemptions from taxation to a building or other property, where a part only was used for the favored purposes, the courts have, in frequent instances, allowed the exemption as to such part, but held the rest of the property taxable. 12 *Am. & Eng. Encycl. L.* (*2d ed.*) 323. Such course was taken by this court in the following cases: *State* v. *City of Elizabeth,* 4 *Dutcher* 103; *State, Camden and Amboy Railroad and Traction Co.* v. *Woodruff,* 7 *Vroom* 94.

Upon failure to adjust the assessments between the respective boards upon the lines here laid down, further application may be made to the court if necessary. A rule may be entered in accordance with the views herein expressed, but without costs to either party.