THE DELAWARE, LACKAWANNA AND WESTERN RAIL-
ROAD COMPANY v. THE MAYOR AND COUNCIL OF
THE CITY OF NEWARK.

1. The actual uses to which lands owned by a railroad company are devoted are the tests by which it can be determined whether the same is exempt from local taxation, as lands used for railroad purposes; and it is the main uses to which it is actually devoted which are to be considered in order to determine this question.

2. If property owned by a railroad is not retained, appropriated or used for purposes incident to the proper construction, maintenance or management of the railroad, or for use by the corporation as a carrier of goods and passengers, then it cannot be said to be used for railroad purposes and will be the subject of local taxation.

3. Where a railroad company uses a freight yard for the purposes of carrying on a private coal business upon its own account, with coal from its own mines, transported in its own cars to such yard, and then from such yard by the railroad company, through its own agents, sold to others in its own name and upon its own account, such yards so used is not property retained or used for railroad purposes and is locally taxable. In order to determine whether such yard is locally taxable, the main actual use to which it is devoted is considered.

On application for summary determination of the character of certain property assessed by the local assessors of the city of Newark, and also assessed by the state board of assessors, for the year 1895.

Argued at November Term, 1896, before Justices LIPPIN-
COTT, GUMMERE and LUDLOW.

For the state board of assessors, *John P. Stockton,* attorney-
general.

For the Delaware, Lackawanna and Western Railroad Company, *Flavel McGee.*

For the city of Newark, *Frederick T. Johnson.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This is a proceeding taken under the two hundred and thirty-ninth section of the statute concerning taxes.   *Gen. Stat., p.* 3332, § 239.   It is taken upon a petition of the Delaware, Lackawanna and Western Railroad Company, alleging that certain property belonging to that company, in the city of Newark, used for railroad purposes, was, by the local assessors of that city, assessed for local taxation for the year 1895.   For that year the railroad company returned the same property, with the exception of a small dwelling-house thereon, to the state board of assessors for taxation, under an act entitled "An act for the taxation of railroad and canal property," approved April 10th, 1884, and the supplements thereto.   *Gen. Stat., p.* 3324.

The valuation placed on these lands by the local assessors, for the purposes of local taxation, was the sum of $60,000, and the tax thereon claimed to be payable to the city of Newark amounts to the sum of $1,168.   Upon the return made by the railroad company to the state board of assessors, a valuation of $58,000 has been placed thereon.   In both assessments the property, after excepting the dwelling-house, is assessed as a whole instead of being divided into different parcels.   As to the house and the enclosure in which it stands, being Nos. 217 and 219 Orange street, no question whatever exists ; it is conceded to be locally taxable, and is not returned by the company to the state board of assessors.   As to the remaining property, some portions would appear to be taxable locally, whilst other portions can only be taxed by the state, through the board of assessors appointed for that purpose.   This depends upon the use to which it was devoted during the year 1895.

The act (*Gen. Stat., p.* 3332, § 239) provides "that all property of any railroad or canal company not used for railroad or canal purposes shall be assessed and taxed by the same assessors, and in the same manner and at the same time as the taxable property of other owners in the same municipal division or assessing district."

The act also provides " that all other property of any railroad or canal company shall be assessed and taxed as hereinafter directed."

The subsequent direction of the act is that such last-named property shall be returned to the state board of assessors as " property used for railroad and canal purposes," and so assessed by them.

The whole question to be determined is whether the whole or any portion of this property was used for railroad purposes during the year 1895.

The whole of the property is evidently designed as a coal and freight yard. The plot contains railroad tracks, platforms, embankments, retaining walls, trestles, coal shutes, and coal pockets beneath the trestles, weighing scales and coal offices, with entrances for carts and wagons from the public street.

The character of the use of lands for railroad purposes, under the statutes, has been very clearly determined in this state. The actual uses to which it is devoted are as good tests as can be established, in order to settle the question whether it is taxable, in one direction or the other, under the statutes.

In the case of *Morris Canal and Banking Co.* v. *Betts,* 4 *Zab.* 555, 559, it was decided that the piers and basins of the canal company, in Jersey City, were the appendages of the canal, and were exempt from local taxation. The court held that it was of no importance that boats not navigating the canal, and merchandise not transported on it occasionally when the pier and basin were not otherwise occupied, were permitted to use them, and that a compensation for such use was charged, and laid down the rule that " the actual purpose for which these works were constructed, the use to which they are primarily dedicated, and the necessity that exists for them, furnish the tests by which this question should be governed."

In the case of *United New Jersey Railroad Co.* v. *Jersey City,* 26 *Vroom* 129, 132, the question was whether the author-

ized right of way of a railroad company, on which the railroad had been constructed and in good faith operated, is used for railroad purposes within the meaning of the act of April 10th, 1884, although it may not, for the time being, be wholly occupied by tracks or other railroad appliances. The court held that it was so used, and that the part of it which awaited railroad occupation upon the demand of necessity is in use, like the curtilage of a dwelling-house or the side of a country highway. But the court, in its opinion, added: "We are also of opinion that when any part of the lands which lie within such right of way are used or appropriated to purposes not incident to the proper construction, maintenance and management of the railroad, or to its use by the corporation as a carrier of goods and passengers, it cannot then be said to be used for railroad purposes, and will be the subject of local tax."

A railroad purpose was well defined by some of the earlier cases. *New Jersey Railroad and Transportation Co.* v. *Hancock, Collector*, 6 *Vroom* 537; *S. C.* v. *Jersey City*, 20 *Id.* 540.

If the property be actually used for other than railroad purposes, it is subject to local taxation. *United New Jersey Railroad Co.* v. *Jersey City*, 28 *Vroom* 563, and cases there cited; *Camden and Atlantic Railroad Co.* v. *Atlantic City*, 29 *Id.* 316.

The learned Chancellor, in the case of *United New Jersey Railroad Co.* v. *Jersey City*, 26 *Vroom* 129, 132, speaking of the property exempt from local taxation, said: "It is the land which the legislature, in its wisdom, has deemed to be reasonably necessary to answer the ordinary and emergent uses of a railway and ensure the continued convenient and safe accommodation of the public. Its dimensions are limited by the law which devotes it to a special purpose." But the exemption does not remain when it becomes actually devoted to some other purpose. The fact that property is owned by a railroad company is not at all conclusive as to the character; the test is the use or purpose for which it is held or the use to which it is actually devoted.

Applying these principles to the evidence taken in this proceeding, it is clear that the portion of this property shown upon the maps exhibited in this case and described in the evidence, which extends from the southerly side of Morris and Essex Railroad avenue, at its intersection with Sheffield street, and thence along Sheffield street, about one hundred and forty-two feet, to property of private owners; thence westerly, along private property, about one hundred feet; thence along a line between the two portions of the railroad property, along what is called a fence on *Exhibit D* 1 in the case, and, as it is on the property, to the easterly side of a stone wall which runs along the westerly end of the coal chute and trestle on the property; thence along and on the line of the wall to the south side of Morris and Essex Railroad avenue, and thence along said avenue to the intersection of Sheffield street, is neither held nor used for railroad purposes.

Most of the evidence upon both sides is devoted to the question of the use to which this portion of the property is actually devoted. The evidence shows that it is used by the railroad as a coal yard, and in which the railroad company carries on a coal business upon their own account. The whole of this yard is used for their own private purposes. This portion of the yard contains an elevated structure upon which the coal cars are run; upon the structure are coal shutes, and beneath are the coal pockets into which the coal is discharged from the cars; in another portion of the yard is another trestle used for the same purposes. The other parts of this portion of the yard are used in connection with this business, including the two offices and weighing scales therein fronting on Sheffield street. The coal which is carried and delivered to this yard is taken from the mines belonging to the railroad company and transported in its own cars to these trestles and coal shutes. The coal is consigned to and received by William Horre & Company, who are not doing any business there on their own account, but act solely and exclusively in the receipt and sale of the coal as the agents of the railroad

company.   The coal is sold by Horre & Company exclusively
upon the account of the railroad company.   No other coal is
carried or delivered at this yard consigned to any other per-
sons.   No coal is delivered by the railroad company at this
yard to any other persons, and the company carries no other
freight to this yard for storage or delivery there, and no
freight whatever is received at this yard for shipment on the
cars of the company.   The railroad company, therefore, is
not a common carrier of freight to this yard, but carries and
delivers its own goods there for sale on its own account, and
conducts a private business of its own in this yard.   Occa-
sionally a car of coal or other freight consigned to some person
at some other point gets mixed in a train and is taken to this
yard, and from thence sent to its proper destination, but this,
under the evidence, is a rare occurrence.   The public has no
accommodations at this yard except it be the privilege of
purchasing at this point coal from the railroad company.

It is clearly evident that the main, if not the only, uses and
purposes of this property are such as are not incident to the
proper construction, maintenance and management of the rail-
road, or to the use of it by the railroad company as a carrier
of goods and passengers.

It is clear that this portion of the property is used by the
railroad company for its own private coal business.   It is not
retained or used for any railroad purposes whatever, and is
therefore locally taxable.

Further applying the same principles, the conclusion reached
is that the frame ice-house in which the Mount Pocono Ice
Company engages in the ice business is taxable to that com-
pany locally.   The land upon which it stands is rented by
the railroad company to the Mount Pocono Ice Company to
be used by it in its private business, and therefore that pre-
cise quantity of land fronting on Orange street, with the ice
storehouse thereon, is taxable locally.   It is conceded that
this land is rented to the Mount Pocono Ice Company, but it
is contended that the rent is a nominal one, and simply for
the purposes of preserving title and avoiding the contention

of adverse possession, but in our view of the law these circumstances are immaterial. The land upon which the ice storehouse stands is not property retained for or devoted to railroad uses nor incident thereto, but under the circumstances no more space than is occupied by the ice-house can be locally taxed.

One Canniff also rents an office of the railroad company, twenty by twelve feet, on Orange street, in which he carries on a private coal business upon his own private account. This office and the land upon which it stands are locally taxable.

All the other portions of the property, consisting of that portion of the yard on Nesbit street, with the approaches to the coal shute up to the stone wall running crosswise of the coal shute, and also that portion of the yard lying on or near Orange street, south of that heretofore described as locally taxable, and south of what is known as the fence, including the platform alongside the ice-house, and the other platforms and tracks thereon, are only assessable and taxable by the state board of assessors. These parts of this yard are held and retained for or used for railroad purposes.

The evidence taken shows that the yard was assessed as one tract of land, and the valuations so made thereon, by both the local assessors and the state board, and therefore the court is unable to adjudge a division of the valuations and assessments in order that the taxes may be paid accordingly. If this cannot be made the matter of agreement between the parties, a further application may be made to the court in the matter.