HIGGINS, Justice.
 

 Mrs. Elva Nash Bond, as owner, and N. L. Pierce, as lessee, of certain real property, brought thjs action against the defendants, the Texas & Pacific Railway Company and Hessmer Gin Company, Limited, to secure an injunction for the purpose of restraining the railway company from leasing to the Hessmer Gin Company, Limited, a portion of its right of way which runs through the plam tation of Mrs. Bond, and also to enjoin the defendants from constructing and operating a gin thereon for private purposes.
 

 The defenses, as set forth in the defendants’ answers, are as follows:
 

 (1)That the railway company owns its right of way in fee simple, and therefore has the right to lease its property to the gin company; and,
 

 ' (2) In the alternative, in the event' it be held that the grant of its right of way is only a servitude, that the railway company has the right to lease a portion of its right of way to a private business, with a view of fostering and increasing its business by obtaining freight therefrom.
 

 When the case was closed in the trial court, defendants raised two additional points:
 

 (1) That the petition was not properly verified, since Mrs. Bond did not sign it, and, as the evidence showed that Pierce was not a lessee of the premises, his affidavit to the petition was insufficient.
 

 (2) That the evidence offered was not adequate to show that Mrs. Bond was the owner of the property, and as she did not testify in the case or appear in court, there was not a sufficient showing that she had an interest in bringing this suit.
 

 There was judgment in favor of the plaintiffs as prayed for, and the defendants have appealed.
 

 A plea of want of proper verification of the petition must be raised in limine litis. This the defendants failed to do. But, even if the objection had been timely raised, we are of the opinion that the trial court properly overruled it, because the affidavit by Mr. Pierce was according to law.
 

 Counsel for the plaintiff filed in evidence certified copies of the various acts of sales, partitions, etc., tending to show that Mrs. Bond was the owner of the property in question. While it is true that she did not either appear in court in person or testify, Mr. Pierce, as a witness in her behalf, stated that Mrs. Bond, a resident of New Orleans, was the owner of the property, and that he leased it from her and was occupying it as her tenant. In the absence of countervailing proof, we agree with our learned brother below that Mrs. Bond established a prima facie case, as far as ownership of the real estate in question was concerned.
 

 The record shows that on June 28,1887, Jacob Bodell, predecessor in title of Mrs. Bond, transferred to the Natchitoches Rail
 
 *768
 
 way Company, ancestor in title of the Texas & Pacific Railway Company, a right of way across his.land in Natchitoches parish, under the following instrument:
 

 “Sale of Right of Way
 

 “State of Louisiana, Parish of Natchitoches:
 

 “Be it known that on this 28th day of June, 1887 before me Chas. V. Porter a notary public in and for the parish of Natchitoches, duly qualified, personally appeared Jacob Bodell of the parish of Natchitoches, who declared" that in consideration of the advantages to be derived by him by the completion and operation of a tap railroad from Prudhomme Station to the City of Natchitoches in this state that he hereby does give, grant and donate unto the Natchitoches Railroad Company .a right of way 150 feet in width over any of his land through which the line of road of said Company now passes, the said Bodell gives said Company the right to fell all timber within reach of the center line of said road & said R. R. Co. binds & obligates itself to construct all necessary cattle guards & crossings, and it will permit the donor herein to cultivate all land included in this grant or to use the same, provided such cultivation or use does not interfere with the management or operation of said railroad.
 

 “This grant is to be perpetual or so long it is to be used as a railroad.
 

 “Done and passed in presence of undersigned witnesses this day & date first above written.
 

 “[Signed] Jacob Bodell
 

 “Attest
 

 “C. E. Dranguet
 

 “Frank L. Metoyer
 

 “Chas. V. Porter
 

 “Notary Public.”
 

 It will be observed that the document does not describe any particular strip of land, but conveys “a right of way one hundred and fifty feet in width” over the grantor’s property. The right to cultivate and use all of the land included in the grant is reserved to the grantor, provided the use or cultivation does not interfere with the management and operation of the railroad. There is a stipulation that the railroad shall have the right to fell all timber within reach of the center line of the road. There is also a provision that the grant shall be perpetual as long as the land is used as a right of way by the railroad.
 

 These provisions and stipulations in the grant are all inconsistent with any intention by the parties thereto to convey a fee-simple title to the property. It is our opinion that the railway company was not granted a fee-simple title to the right of way in question, but a right of passage or servitude. Moore Planting Co. v. Morgan’s Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22; Natalie Oil Co. v. Louisiana Ry. & Nav. Co., 137 La. 706, 707, 69 So. 146; Louisiana Sulphur Mining Co. v. Brimstone R. & Canal Co., 143 La. 743, 79 So. 324; Sallier v. Bartley, 113 La. 400, 37 So. 6; Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; Coguenhem v. Trosclair, 137 La. 985, 69 So. 800.
 

 Counsel for the defendants have referred us to the case of Kirk v. Kansas City, S. & G. Ry. Co., 51 La. Ann. 664, 667, 25 So. 463. In that case it was held that the conveniences, advantages, and benefits resulting from the building of a railroad over plaintiff’s land and the enhancement in value of the adjacent property was sufficient consideration to
 
 *770
 
 support a commutative contract. The case is not apposite here.
 

 It is not disputed that the railway company was about to lease a portion of its right of way to the gin company for the purpose of erecting and operating a privately owned cotton gin plant. In fact, it clearly appears that a great portion of the gin and the seed house were erected over the plaintiffs’ protest. Defendants contend that the railway company, as a grantee of the right of way or servitude, has the right to lease a portion of it to any privately owned and operated business, in order to promote its business by obtaining additional freight.
 

 Articles 722, 753, and 797, Revised Civil Code, read as follows:
 

 “722. The right of passage or of way, is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, on horseback, or in a vehicle, to drive beasts of burden or carts through the estate of another. When this servitude results from the law, the exercise of it is confined to the wants of the person who has it. When it is the result of a contract, its extent and-the mode of using it is regulated by the contract.’’’
 

 “753. Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in, favor of the owner of the property to be affected.”
 

 “797. If he to whom a servitude is due enjoys a right more extensive than that Which is given him by the act establishing the servitude, he will be considered as having preserved his right of servitude; because the less is included in the greater.
 

 “But he can not thus prescribe for the surplus, and can be compelled to confine himself to the exercise of the servitude granted by his title, unless it be a continuous apparent servitude, which he has acquired by prescription.”
 

 See, also, article 658, R. O. C.
 

 In the case of Godchaux v. Iberia-Vermilion Ry. Co., 132 La. 77, 60 So. 1027, the plaintiff, by warranty deed, sold five acres of land to the defendant for $1,000. The sale contained the following clause:
 

 “It is well understood and agreed that this transfer of the above-described property is made solely for the purpose of enabling the said railroad company the right to use the same for the necessary side track, yard, depot, grounds, warehouses, landing, turntable, roundhouse, etc., and for all necessary purposes for the use and enjoyment of said railroad company.”
 

 In issuing and making perpetual the injunction restraining the railway company from using the warehouse erected on the property in question, for private purposes, the court said:
 

 “The clause in the act of sale reciting the purposes of the conveyance is couched in general terms. The clause expressly includes both ‘depot grounds’ and ‘warehouses,’ and thus recognizes ‘warehouses’ as a necessary railroad purpose. As the limitation on the uses was in favor of the vendor, any doubt or obscurity arising from the want of necessary explanation of the terms employed should be construed in favor of the purchaser. G. C. art. 1958. Thus construed, the clause means that the ‘warehouses’ referred
 
 *772
 
 to may be .used for any railroad purpose. The clause, however, if it means anything, excludes the use of such warehouses for private purposes. The clause has none of the earmarks of a resolutory condition, but is what is called at common law a ‘covenant’ or at civil law an ‘accidental stipulation.’ O. O. 1764. The remedy for the breach of such a stipulation is by injunction or suit for damages. The case of Wilczinski v. Louisville, N. O. & T. Ry. Co., 66 Miss. 595, 6 So. 709, cited in plaintiff’s brief, was an injunction suit to prevent the railroad company from permitting a third party to erect a seed-house upop the lands granted for ‘a railroad purpose and none other.’ Whether the defendant railroad company operates a warehouse for railroad purposes directly or through a lessee does not concern the plaintiff, the gist of whose complaint seems to be that the warehouse is used for private purposes. This complaint to some extent is supported by the evidence. While the act of lease does not confer on the lessee the right to use the warehouse for private purposes, it was the business of the railroad company to see that the warehouse was not used for purposes beyond the purview of the contract. * * * J»
 

 The instrument in the instant case is silent as to the right of the railroad company to lease any portion of the right of way to private industry. The' defendant railway company seeks to imply this right on the ground that it cohld use its right of way for railroad purposes, and, consequently, could indirectly exercise that right by leasing a portion of its right of way to privately owned industries through which the railway company would obtain freight.
 

 The evidence shows that the gin company was privately owned and was in business to serve the general public. Any farmer could bring his cotton there and have it ginned and baled. It was admitted that the railway company had no contract with the gin company to handle any freight. The railway company simply hoped to obtain additional business through the proposed industrial lease. The grant of the right of way was for railroad purposes, and therefore does not include business of a nonrailroad nature. The operation of a cotton gin is outside of the sphere of railroad business when it is privately owned and operated to serve the general public. Godchaux v. Iberia-Vermilion Ry. Co., supra; Wilczinski v. Louisville, N. O. & T. Ry. Co., 66 Miss. 595, 6 So. 709; C. J. vol. 51, p. 570, note 18; Delaware, etc., Ry. Co. v. City of Newark, 60 N. J. Law, 60, 37 A. 629; City of Sturgeon v. Wabash Ry. Co., 223 Mo. App. 633, 17 S.W.(2d) 616-620.
 

 To permit the railroad company to lease its right of way to privately owned and operated businesses, with the hope of obtaining freight therefrom, would be doing violence to the reservations in the grant in favor of the grantor “to cultivate all land included in this grant or to use the same, provided such cultivation or use does not interfere with the management or operation of the said railroad.” In short, to permit the railroad company to do what is attempted here would be to hold that the grant gave the railway company the unrestricted use of its right of way, whereas the instrument contains express stipulations to the contrary.
 

 For the reasons assigned, the judgment appealed from is affirmed.