79 So.2d 150 (1955)
LOUISIANA POWER & LIGHT COMPANY, Plaintiff-Appellant,
v.
Sam J. DILEO et al., Defendants-Appellees.
No. 3989.
Court of Appeal of Louisiana, First Circuit.
March 25, 1955.
Rehearing Denied April 22, 1955.
*153 Monroe & Lemann, New Orleans, Reid & Reid, Hammond, for appellant.
Zelden & Zelden, New Orleans, Joseph D. Lupo, Independence, for appellee.
TATE, Judge.
In December, 1953, Louisiana Power & Light Company (hereinafter denoted as "the Company") instituted expropriation suits against six property owners in Tangipahoa Parish. These suits were consolidated on trial and appeal. In this opinion, we will give reasons for judgment in all cases, since all concern closely related questions of law and fact, and we will render separate decrees hereinafter reported as follows: Louisiana Power & Light Company v. Dileo, 79 So.2d 162; Louisiana Power & Light Company v. Rogers, 79 So.2d 161; Louisiana Power & Light Company v. Starkey, 79 So.2d 161; Louisiana Power & Light Company v. Lavigne, 79 So.2d 160; Louisiana Power & Light Company v. Rogers, 79 So.2d 160; Louisiana Power & Light Company v. Forrest, 79 So.2d 162.
Plaintiff-appellant Company appealed suspensively and devolutively from the amount of the awards to the defendant landowners herein, furnishing bond according to law for the suspensive appeal and as fixed by court order for the devolutive appeal. In this court, all defendants-appellees filed motions to dismiss the suspensive appeal, and defendant C. G. Forrest alone filed an answer requesting an increase in the amount awarded to him. (While the other defendant-landowners requested increase of the awards, they did so only by statements of counsel in brief. Having failed to appeal or to answer the Company's appeal, any request for increase by these latter defendants cannot be considered.)
Defendant-appellees' contend that the company's suspensive appeals should be dismissed since no suspensive appeal is permitted in expropriation suits, LSA-R.S. 19:13 (except for certain limited purposes not here relevant). It is unnecessary, however, to decide this because the present suspensive appeals suspend nothing and are surplusage. Under the same statute, LSA-R.S. 19:13, the Company must deposit the money into the register of Court before taking possession of the property expropriated; and these judgments have not become executory as to payment of the money to the landowners, there having been no attempt by the Company to take the expropriated property.
*154 The defendants have raised certain defenses, such as that of prematurity for failure of the Company to offer a sum for the proposed right of way prior to suit; but all defenses to these suits (except defendants' claim as to the amount of compensation for the land sought and of severance damages for the remaining portion of the properties) have been waived by the failure of defendants herein to file answer within ten days of service, LSA-R.S. 19:6, 7; State v. Landry, 219 La. 721, 53 So.2d 908. All defendants having filed answer twenty-seven days or more after service, the trial court properly ruled that the sole issue before it was that of quantum, which is the sole issue before us on appeal.
The land sought to be expropriated in these six suits forms a continuous strip just west of U. S. Highway 51 in Tangipahoa Parish. During 1953, Highway 51 was widened from 18 to 24 feet. Plaintiff Company had since before 1930 maintained poles and a power line on the western side of Highway 51, but the widening brought the highway edge just six feet from these poles. The Louisiana Department of Highways requested removal of the poles from their present location so close to the present pavement, as creating a hazard to traffic, and also as interfering with maintenance of the shoulder and new ditches.
Since the defense of alternative relocation of this power line has been waived by failure of defendants to file answers within ten days, we must accept the uncontradicted testimony of Company and Department of Highway engineers that a right of way west of the highway 30 feet in width (15 feet on both sides of the poles and lines) is required for maintenance and safe operation of this type of power line, for clearance of underbrush, and trimming growth of trees and bushes, State v. Cooper, 213 La. 1016, 36 So.2d 22. The Department of Highways' right of way extends 41 feet west of the present paved highway edge, and in the present proceedings by letter and sworn testimony the Department's consent was given to location of the proposed new power line within its highway right of way, but west of the western ditch, at a point not closer to the highway than 33 feet west of said highway.
This proposed relocation of the poles and power line would place it eight feet within (or east of the western edge) of the Department of Highways' right of way, but the proposed Company right of way would extend west a total of 15 feet, or seven additional feet into defendant-landowners land beyond the highway right of way. (It would also extend east 15 feet from the pole into the highway right of way.)
Defendant-landowners objected to (as enlarging or altering the demands of the petition) introduction by the Company of a composite map showing locations of all tracts sought to be expropriated and with slightly different measurements than the plats attached to the separate petitions under LSA-R.S. 19:2.1(2); and also to any evidence tending to show that because of prior highway rights of way the Company did not need as much land as sought in the original petitions. The trial court correctly admitted the evidence insofar as by it the Company did not seek land beyond or in addition to the limits of the land sought in the original petitions.
On the day of trial and in its briefs since, the Company has argued that it needs to expropriate only 7 additional feet of the defendants' land rather than the 31 feet originally sought. The Company bases this contention upon the introduction of Department of Highway rights of way granted in 1929 by the predecessors in title of all present defendants (except as to one of the three Starkey tracts, which we will discuss briefly below), the western boundary of which highway rights of way extends 41 feet from the western edge of the present Highway pavement.
These highway rights of way without exception grant an 80-foot right of way "over and across" the landowner's land and contain the provision:
"It is expressly understood and agreed that this dedication and transfer *155 of the above described right of way is made for and shall be used solely for the construction and maintenance of the said Hammond-Amite State Highway (Route No. 33)."[1]
(These rights of way, incidentally, were without exception given without cash consideration, the stated consideration being to accept the advantages accruing by location of the highway through the premises.) Thus the State through its highway right of way servitude "has no right of ownership in the part, but only the right of using it", Article 658, LSA-Civil Code, and further the extent and mode of this servitude is regulated by the contract creating it, Article 722, LSA-Civil Code.
Plaintiff-Company properly sought the consent of the Department of Highways to place their poles on and line across the land subject to the highway right of way. But the Company cannot set their poles on and their lines across these lands without the consent also of the owners of the surface title thereto, or without securing this servitude by expropriation as here. Although the strips of land in question are subject to a servitude for public highway purposes, this servitude does not extend to the use for private power line purposes. Insofar as binding the surface owners of the land, the highway department for the State of Louisiana as owner merely of the highway servitude has no authority to grant permission to another for its use for another purpose, Bond v. Texas & Pacific Railway Co., 181 La. 763, 160 So. 406; Godchaux v. Iberia-Vermilion Railroad Co., 132 La. 77, 60 So. 1027; City of Alexandria v. Morgan's Louisiana & Texas Railroad & Steamship Co., 109 La. 50, 33 So. 65, and the lead case, Bradley v. Pharr, 45 La.Ann. 426, 12 So. 618, 19 L.R.A. 647.
The considerations which influence a landowner to grant even without price a public highway servitude providing access to his property may not be the same cause or consideration which would influence him to grant a power line servitude. The requirements for and the results of use of the two servitudes may be very different. The power line servitude, permitting the placing of power line poles on the front lawns of homes with attendant trimming of shrubs and trees, may be very much more onerous than the highway servitude of right of way. In the present instance, the highway department's exercise of its servitude did not for twenty-five years interfere with the surface owner's use of the western thirty feet of the highway right of way, as seen by the testimony that the landowners placed fences, shrubs, and even a building in this portion of the right of way. Even now, with a wider highway and much broader ditch, the highway department does not interfere with the landowner's use of the rear (western) 13-20 feet of its right of way, presently unneeded for highway purposes. Thus we must reject the Company's argument that compensation for the servitude should be based only on *156 the additional 7 feet west of the highway right of way to be used, and not also for the 23 feet within the highway right of way that the Company proposes to use.
It might be added that under the doctrine of acquisition of a servitude by unopposed use for a public purpose, Gumbel v. New Orleans Terminal Company, 186 La. 882, 173 So. 518; Tate v. Town of Ville Platte, La.App., 1 Cir., 44 So.2d 360, the Company through inaction and implied ratification by the landowners has acquired a servitude permitting it to place its lines at their present location 6 feet west of the paved edge of the present highway; but the Company's servitude at this present location close to the highway is based on mere occupancy and is limited to the land actually used by the Company there, Consolidated Companies, Inc., v. Haas Land Co., Ltd., 179 La. 19, 153 So. 6, and does not import any right to locate its power lines 27 feet further west into defendant-landowners' property.
With regard to the valuation placed by the trial court upon the servitude granted in these expropriation proceedings, the trial court's award will not be disturbed unless manifestly erroneous. As indicated briefly below, we feel the evidence supports the valuation placed by the trial court, and we will neither reduce the awards as requested by the Company-appellant, nor increase same as requested by defendant Forrest.
The measure of the landowner's award in expropriation suits shall be the market value of the property sought to be expropriated at date of suit, LSA-R.S. 19:9, State v. Landry, 219 La. 721, 53 So.2d 908, 910. In arriving at this market value, consideration may be given to any and all uses to which the property is adapted, State v. Chadick, 226 La. 367, 76 So.2d 398. Furthermore, "compensation is due to the owner not only for the value of the property actually taken but also for damage caused to his remaining portion after the taking", Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914, 916, see also LSA-R.S. 19:6. While "consequential" damages, such as additional discomfort or loss of esthetic values, are not per se compensable, Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295; yet if they are such as to diminish the commercial value of the remaining property, they are properly considered in determining the award to the landowner, Schneidau v. Louisiana Highway Commission, 206 La. 754, 20 So.2d 14; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1.
With these general principles in mind, we are setting forth in the table below as to each landowner: (A) the amount tendered by the expropriation petition in each suit; (B) the amounts offered by the Company's landman (whether or not before suit is contested); (C) Valuation by T. G. Womack, real estate agent, on behalf of the Company, which however failed to consider the "severance damages" or loss in value of the remaining portion of the property caused by the intended right of way, and further failed in some instances to consider the value of cutover or vacant land available for residential or commercial purposes; (D) Special damages to trees and shrubbery which the Company's experts admitted would be caused by right of way, but which considered only value of "commercial" timber aind failed to value shrubbery and ornamental trees; (E) requested compensation by defendants in answers filed in suit; (F) Defendants' proof of special damages (see also discussion of each tract below), in most instances being based on testimony of horticulturist, R. H. Burns, as to replacement market value of ornamental shrubs, trees, lawns, etc., affected by the right of way, which however failed to consider that while the right of way would necessarily by trimming and construction activities damage a portion of this growth, it would not result in its total destruction; (G) the trial court's award.

*157
 A B C D E F G
 Name Power Company Company's landman Womack, for Special damages Defendants answer Defendants proof of value (see Trial Court
 offer in petition V. Barazettc Company testified admitted by demanded also discussion of each tract.) awarded
 for 31 feet offer before trial land value of Company
 usufruct
 30 feet wide
Sam J. Dlleo $39.85 Nothing (See $900.00 None $21,000.00 $5,053.75including deprecited $750.00
 Opinion) $1,000.00 value of value of fine home.
 strip $20,000.00 severance
 value
Jessie J. Rogers $21.35 $50.00 $140.00 $50.00 $600.00 Location of power line would $300.00
 for Rogers to move building
 further to rear of shallow
 depth property
Curler Lavigne $41.00 $30.00 $ 99.00 $500.00 Severe limitation of farming $250.00
 operation use of end of field
 for farming.
Gayle Rogers $20.05 $50.00 $110.00 $500.00 $284.00 shrubs and trees $200.00
C. G. Forrest $17.70 $75.00 $450.00 $7,540.00 $1,318.25 shrubs and trees destroyed $750.00
 $3 540.00 value of plus great devaluation
 servitude sought $2,500.00 in value of fine home by defacement
 severance of lawn.
 value
Mrs. Irene Starkey| | | |
 Tract No. 1 | $ 93.00 | $10.00 | |
 6.3 acres | | | | $529.00 for shurubbery and trees
 Tract No. 2 } $116.00 $450.00 $200.00 } $307.00 $50.00 } $70.00 } $1,500.00 plus very great depreciation in $850.00
 7.80 acres | | | | value of home place by losing
 Tract No. 3 | $ 14.00 | $10.00 | | shade trees and lawn
 6.08 acres |

*158 The Company argues with some force that since the power lines are in the front of the homes now anyhow, defendant landowners sustain no appreciable depreciation in the value of their property through the proposed relocation of the lines.
The property sought to be expropriated lies in a residential and commercial neighborhood about four miles south of Independence and immediately north of the Natalbany community. Almost all the tracts are very shallow in depth from the highway. At least two very expensive homes have been built on these tracts, and several other comfortable homes are there situated. There is testimony of attempted purchase of some of the vacant land for residential or commercial purposes. Three of the residences are about 100 feet west of the paved edge of the highway, the two very expensive homes are about 200 feet west thereof, and one home is about 300 feet west thereof; and it is apparent from the testimony that moving the poles and lines from six feet west of the pavement to 33 feet west of the pavementthat is, from across the ditch into the frontyard will depreciate the market value of this property for residential purposes.
The following are brief descriptions of the tracts affected by the proposed rights of way:
1. Dr. Sam J. Dileo Tract: This is a narrow triangular tract, 5.15 acres in extent, having a front of 1,313 feet along La. Highway 51. On this tract, Dr. Dileo has just finished building a very fine house 194 feet west of the pavement, costing about $25,000 as built by himself, and valued at $35,000 if built by contract. Dr. Dileo has also completed very expensive terracing work and witnesses were produced to the effect that because of the crest of the hill and the terracing done, the intentional effect of which was to produce a "sky-line view", the proposed location of the power lines closer to the home, together with the lowered height thereof, would be destroying the esthetic appearance, and would depreciate the value of the house at least 10 per cent, according to defendant's expert witnesses. There was evidence further in the record that the proposed new power line location would in the northern narrow tapering point of the tract completely destroy its usefulness either for commercial or residential property. As proposed, the new power line poles would apparently be situated in Dr. Dileo's driveway.
2. Jessie Rogers Tract: This is a 1.35 acre tract, having a highway front of 208 feet. The house is situated 110 feet west of the pavement. On this tract a concrete plant is situated, and according to J. J. Rogers the further encroachment of the power line would force him to move his operation further back in a relatively narrow strip, approximately 300 feet altogether in depth from the highway.
3. Curley Lavigne Tract: This is a 13.6 acre tract, having a highway front of 682 feet, devoted to farming purposes. The residence is 300 feet west of the pavement. Lavigne testified that the poles would prevent his plowing the entire eastern end of his field.
4. Gayle Rogers Tract: This is an 0.85 acre very shallow tract having a front of 192 feet on the highway. The house is 100 feet west from the paved portion of the highway. Rogers maintains a garage for a dragline with boom 50 foot in length, and the prower line being so much closer to his garage will prevent his use of the garage insofar as revolving the dragline, etc., in the process of repairing it. Burns testified that $284 worth of trees and shrubs would be destroyed, and that the owner had apparently spent some time and effort landscaping the front of his property.
5. C. G. Forrest Tract: This tract has a frontage of 685 feet on U. S. Highway 51, and the house is situated approximately 200 feet west of the pavement. The testimony indicates that it is a very expensive house, and has been expensively landscaped, with many shrubs, azaleas, pine and mimosa trees situated within the area of the proposed 30 foot right of way. R. H. Burns, horticulturist, testified that *159 the value of the shrubs situated on the right of way was $1,318.25, and that while some can probably be saved, the process of transplanting will be greatly injurious to them, as well as the process of trimming them to suit the right of way requirements.
6. Mrs. Irene R. Starkey (Three Tracts):
Tract a. The most southern of the Irene R. Starkey tracts is a long narrow 6.3 acre tract, having a front of 1361 feet on the highway, being bounded west by the highway and south by a gravel road. Mrs. Starkey testified that she had been offered $500 per acre for this unimproved tract, but that she wished to keep it for revenue producing purposes because of timber, etc.
Tract b. A 7.80 acre tract with highway front of 290 feet and the house 100 feet west of pavement. This was the old homeplace of Mrs. Irene Starkey, where she was raised, and is landscaped with a number of shade trees and other shrubbery. Mrs. Starkey testified that if the shade trees were cut, the value of this homeplace would be very greatly decreased. Burns' estimate included the cost of replacing a very fine and beautiful lawn in the event heavy construction machinery passed over it.
Tract c. A 6.0 acre unimproved tract with a front of 203 feet.
Burns testified that the value of the trees and shrubbery on the affected portion of all these three tracts totalled $529.
With respect to tract a, the Louisiana Power & Light Company in 1926 by right of way servitude recorded at Conveyance Book 121, page 230, had already acquired a servitude 30 feet in width for a distance of 1361 feet along the old Jefferson Davis Highway. Since the measurements in the present suit do not include the old western line of the old Jefferson Davis Highway, from an excess of caution we will affirm the trial court grant of another 30 foot right of way, for the same reason that it did, namely to accord plaintiff the amount of land needed by it, with the understanding that this may overlap the previous right of way previously granted as to this tract of land, and that altogether the land subject to the right of way or servitude of Louisiana Power & Light Company should not extend beyond 48 feet west of the present pavement of Louisiana U. S. Highway No. 51.
Payment of Costs:
The District Court assessed the Company-appellant with all costs of this suit, including fees of plaintiff's expert witnesses. The Company complains of this ruling on the ground that under Louisiana Highway Commission v. Bullis, 197 La. 14, 200 So. 805; American Telephone and Telegraph Company of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4, the formal tender required by LSA-R.S. 19:12 is not essential when it would be of no avail. However, LSA-R.S. 19:12 requires the expropriation plaintiff to tender the "true value" of the property in order to avoid imposition of costs, and as will be seen in the chart above, the formal tenders in the Company's petition were grossly inadequate, not only with respect to the amounts awarded by the Court, but even as to the Company's own evidence as to the true value of the properties sought.
Because Dr. Dileo, a busy general medical practitioner, refused to discuss in his office a right of way with the Company's landman, the Company argues as to him at least there was no necessity of further tender. Even had the formal tender in the Company's petition been more adequate, we are inclined to believe that this attempted interview by the Company's landman, without further correspondence or any attempt to approach the doctor at a more suitable occasion, did not constitute a bona fide attempt to secure the right of way without suit.
The Company-appellant has called to our attention an apparent inaccuracy or insufficiency in the description of the strips over which the right of way was granted, which are described as having a western edge 46 feet west of the pavement. The expert testimony indicated that the Company needed a right of way ending at least 48 feet west of the highway. As a matter *160 of fact, from the descriptions indicating an intention to grant a right of way of 30 feet in width parallel to the pavement, with eastern edge 18 feet west of the paved edge of the present highway, it is apparent that this error is clerical in nature. (The descriptions indicate that the northern and southern boundaries are 31 feet in length, being at an angle along the property lines, but the perpendicular depth of the rights of way is 30 feet.) We will therefore amend the descriptions in all of the judgments to indicate that the western edge of the right of way granted is 48 feet west of the western edge of the pavement of present U. S. Highway 51.
It is of course understood that the rights of way granted to the Company herein are subject to any prior rights of way servitudes insofar as they affect the same lands, Article 749, LSA-Civil Code.
Separate decrees will be rendered hereinafter in each of the cases.
NOTES
[1] While it appears that these highway rights of way unquestionably conveyed a servitude rather than a fee simple title to the State, see Article 753, LSACivil Code, and Rock Island, A. & L. R. Co. v. Guillory, 205 La. 141, 17 So.2d 13, it is unnecessary to consider them as doing otherwise. The Company alleged in each instance (Article 7) that the landowners owned the entire 30-foot strip in question, and in each instance this allegation was admitted by defendants' answer. If these deeds were introduced to contradict the admitted allegations of the petitions and to question the defendants' surface ownership (rather than as evidentiary on the issue of damages), then defendants' objections to their admission should be sustained. For the same reason, insofar as these present proceedings between these particular parties, it is unnecessary for us to consider that by at least one acquisition deed the present landowner-defendant acquired only the property west of (that is, being bounded east by) the highway right of way, thus raising the possibility that the predecessor in title rather than the present landowner-defendant owns the surface title of the land subject to the highway right of way servitude, see Chiasson v. Duplechain, La.App., 1 Cir., 56 So.2d 615.