479 So.2d 1003 (1985)
Weston PORTER, et ux., Plaintiffs-Appellants,
v.
ACADIA-VERMILION IRRIGATION CO., INC., Defendant-Appellee.
No. 84-927.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*1004 Dan Keefe, Lafayette, for plaintiffs-appellants.
Broadhurst, Brook, Mangham, Hardy & Reed, Randall Karr, Lafayette, for defendant-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
GUIDRY, Judge.
Plaintiffs, Weston J. Porter, Sr. and Hazel Porter, instituted this suit against Acadia-Vermilion Irrigation Co., Inc. (AVICO) seeking a judgment declaring that a certain instrument, executed by their ancestor in title on December 22, 1910, conveyed a servitude over a strip of land for canal purposes rather than the fee title to such strip. The trial court ruled in defendant's favor, holding that the instrument conveyed fee title to the disputed strip of land. In reaching this conclusion, the trial court refused to consider any extrinsic evidence to the contrary. Plaintiffs appeal.
Plaintiffs set forth the following issues for review:
1. Was the December 22, 1910 document ambiguous, thus requiring the trier of fact to examine extrinsic evidence?
2. Did Francois R. Broussard transfer fee title to the disputed strip of land?

*1005 3. Are appellants entitled to a judgment declaring them to be fee title owners in indivision of the disputed strip?

FACTS
On December 22, 1910, Francois R. Broussard and United Irrigation and Rice Milling Company executed a document before Walter B. Gordy, Notary Public. The document was in printed form and captioned "Cash Deed". In such deed, Francois R. Broussard did "Grant, Bargain, Sell, Convey, Transfer, Assign, Set Over and Deliver, with all legal warranties, and with a full guarantee against all troubles, debts, mortgages, claims, evictions, donations, alienations or other encumbrances whatsoever" to United the following described property:
"That certain strip or parcel of land situated in Vermilion parish, Louisiana, lying in the East half of the South East quarter (E.½ of S.E.¼) of Section sixteen (16), and the North East quarter of the North East quarter (N.E.¼ of N.E.¼) of Section twenty-one (21) in Township thirteen (13) South Range two (2) East of Louisiana Meridian, and more particularly described as Beginning on the south side of the public road, twenty (20) feet south and forty (4) [sic] feet west of the north east corner of the South East quarter of said Section sixteen, and running thence in a Southwesterly direction to a point on the south line of aforesaid North East quarter of North East quarter of Section twenty-one, twelve hundred feet west of its south east corner; thence West, along said south line one hundred (100) feet, more or less, to the east side of the public road running along the west side of said North East quarter of North East quarter; thence in a northeasterly direction to the south side of the public road first herein mentioned; thence East, along the south side of said public road, one hundred (100) feet to the place of beginning; all in accordance with a plat hereon endorsed and made a part hereof."
The following two paragraphs were typed in immediately after the above-quoted property description:
"In consideration of the purchaser, its successors and assigns constructing, maintaining and operating a canal for irrigation purposes on the strip of land herein before described and herein conveyed, vendor binds and obligates himself, his heirs and assigns to take water for irrigation purposes from said purchaser, its successors or assigns, as long as the said strip shall be used for canal purposes, and to pay therefore the same water rent that shall be charged by purchaser to its other customers.
And in consideration of the conveyance herein made and the foregoing agreement on the part of vendor, the purchaser hereby agrees to construct, operate and maintain on said strip a canal for irrigation purposes and to furnish water therefrom to the vendor, his heirs and assigns at the same price charged to its other customers."
Although not mentioned by either the trial judge or the parties, the above typewritten paragraphs were stricken from the text of the agreement, as is clearly evidenced from the certified copy of the document introduced in evidence. The deletion was not initialed by the parties but nonetheless must have occurred either prior to the execution of the agreement or certainly prior to its recordation on January 24, 1911.
The document thereafter recites that the property was conveyed with full legal warranties and that the taxes assessed against it were paid. The stated consideration for the conveyance was one dollar ($1.00). The following typed paragraph appears in the document at the bottom of the second page:
"And the further consideration of the benefits and advantages to arise from the construction of a canal for irrigation purposes on said strip, and the agreement on the part of purchaser to water the lands of vendor as here in above set forth."
*1006 Plaintiffs are the successors in title of Francois Broussard to a 40 acre portion of the tract of land formerly owned by Francois Broussard, through which the irrigation canal constructed by AVICO traverses. AVICO is the successor in title of United Irrigation and Rice Milling Company (United). The canal was constructed and maintained by United and its successors until 1980 when AVICO dismantled and ceased operation of the canal. Plaintiffs thereafter instituted this suit to have themselves declared owners of the disputed strip of property.

IS THE DOCUMENT AMBIGUOUS?
The trial judge, in his written reasons for judgment, held that the 1910 deed was clear and unambiguous, and by virtue thereof, Francois R. Broussard conveyed full fee title to the disputed strip of land to United. The trial judge listed the following factors as being determinative of his finding:
1. The language in the document stated that vendor "does by these presents, Grant, Bargain, Sell, Convey, Transfer, Assign, Set Over and Deliver ...".
2. In the typewritten portion of the document, the parties agreed that the vendee would construct and the vendor would take water from a canal "... on the strip of land herein ... conveyed".
3. The sketch or plat attached to the document labeled the strip of land at issue as "strip conveyed herein", while the strip of land belonging to an adjoining landowner was labeled "Canal Right of Way". The trial judge stated that, "Surely, if the parties to the sale in question had intended the strip to be merely a right of way, they could, and would, have so labeled it, as was done on the strip to the north."
Concluding that the document was clear and unambiguous on its face, the trial judge determined that extrinsic evidence relating to the contracting parties' intentions was not to be considered.
Courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. La.C.C. Art. 1945[1]; Baker v. Life General Security Insurance Co., 405 So.2d 1162 (La.App. 1st Cir.1981). The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by extrinsic evidence. Bonfanti Marine Inc. v. Clement, 439 So.2d 537 (La.App. 1st Cir.1983). Thus, it is only where the agreement is unclear, ambiguous or will lead to absurd consequences that the court should go beyond the written agreement to gather the parties true intentions.
Our initial inquiry is whether the words used in the agreement between Francois R. Broussard and United, when viewed in their totality, are clear and unambiguous. Our reading of this document prompts the conclusion that the document is ambiguous.
The first ambiguity which we observe in the document is the stated consideration of $1.00. This price is clearly out of proportion with the value of the land purported to be sold.[2]
It might be argued that the consideration stated in the agreement was actually $1.00 plus the obligation of the purchaser to water the lands of vendor, as stated in the final paragraph of the document. However, that paragraph concludes with the words "as here in above set forth". As noted earlier, the typewritten paragraphs referred to, describing the obligation of the *1007 vendee to water the seller's lands at the rate charged to other purchasers, were deleted from the instrument. Such deletion creates ambiguity in the document since we thus do not know the terms of vendee's obligation to water vendor's lands. Because of the mentioned deletion, the final paragraph could be interpreted to mean that the vendee was obligated to water the vendor's lands at no charge. This consideration added to the stated $1.00 consideration might then be considered commensurate with a sale of 9.09 acres of land. However, if this be the case, why would the sentence conclude "as here in above set forth". The phrase "as here in above set forth", where the hereinabove language has been deleted, could also be construed as meaning there was no obligation on the part of the vendee to furnish water and no obligation on vendor's part to take water. Thus, the only consideration remaining would be the stated $1.00.
In any event, the document is ambiguous because of the nominal consideration of $1.00 and the confusion brought about by the deleted paragraphs and the remaining typewritten paragraph in the instrument. In sum, we conclude that the trial judge clearly erred in finding the document clear and unambiguous and refusing to allow extrinsic evidence to clarify the intentions of the parties.

DID THE DOCUMENT CONVEY FEE TITLE OR A SERVITUDE?
We next consider, through an examination of the document as a whole together with the extrinsic evidence, whether the parties intended to confect a conveyance of the fee title or a servitude for canal purposes.
Our jurisprudence notes several factors which should be considered when deciding whether fee title or a servitude has been conveyed in cases similar to the one at hand. These factors include:
1. The consideration recited in the deed;
2. Whether a specific measurement was given to the "right of way";
3. Whether the party claiming the fee title had an actual need for such title;
4. To whom the property was assessed and who paid the taxes on the property;
5. Whether the grant was made for a specific purpose;
6. Whether the grant was made "in perpetuity" or "forever"; and,
7. How the parties to the conveyance, or their heirs and assigns, have treated the property.
Meaux v. Southdown Lands, Inc., 361 So.2d 974 (La.App. 3rd Cir.1978); Sohio Petroleum Company v. Hebert, 146 So.2d 530 (La.App. 3rd Cir.1962), writ ref., 243 La. 1004, 149 So.2d 763 (1963).
As mentioned earlier, the stated consideration in the document was $1.00, plus the ambiguous phrase pertaining to United's duty to water the lands of Broussard. We find that a consideration of $1.00 cannot be deemed serious for a sale of 9.09 acres. In a similar case, Noel Estate, Inc. v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468 (1937), our Supreme Court considered whether a deed executed in 1900 conveyed fee title or simply a servitude to the defendant railroad company. In the Noel deed, the stated consideration was only $1.00 for 9.68 acres of land. In addressing this issue, the court stated:
"We further observe that the consideration of the conveyance was $1 cash and the smallness or inadequacy of the consideration is wholly inconsistent with any idea or intention on the part of the parties that there was a sale of fee-simple title to the 9.68 acres of land. The conveyance of land to a railroad for a right of way or for railway purposes is the grant of a servitude. Knox v. La. Ry. & Nav. Co., 157 La. 602, 102 So. 685; Rev. Civ.Code, Arts. 709, 722."
In Hunter Co., Inc. v. Ulrich, 200 La. 536, 8 So.2d 531 (1942), our Supreme Court again addressed the issue of whether the stated consideration in a deed evidenced an intent to convey fee simple title or a servitude. The deed was confected in 1900 and related to certain strips of land *1008 150 feet wide in Calcasieu Parish. The court in Hunter found that:
"A circumstance indicating that the conveyance was merely one of a right of way rather than of a fee title is the consideration for the transfer which, as shown in the abstracter's take off, was `$10.00 and other valuable considerations.' Apparently the only money paid for the rights conveyed was $10 which was wholly out of proportion to the value of the fee to so large a quantity of land as was described in the deed. The other valuable considerations to which reference is made were to result probably from the digging of the canal. This, in itself, would indicate that the transfer was made for canal purposes only...."
We find, as did the courts in Noel and Hunter, that the consideration stated in the instant case is not indicative of an intent to convey fee title to 9.09 acres of land.
The next factor to consider is whether a specific measurement was given to the "right of way". The phrase "right of way" was never used in the present document. In cases where the "right of way" is not specifically described, our courts have held that such lack of description evidences only an intent to convey a servitude. Sohio Petroleum Company v. Hebert, supra; Bond v. Texas & P. Ry. Co., 181 La. 763, 160 So. 406 (1935). In the instant case, the disputed strip is described with exactness. We do not, however, view this single circumstance as conclusive.
We next consider whether United had an actual need for fee title to the disputed strip of land. As is evident from the last paragraph of the document in question, United's stated purpose for acquiring the strip of land was to construct an irrigation canal and to water the lands of Broussard and others. The evidence reveals that the canal was constructed and continuously provided the occupants of the lands bordering it with water until 1980. The record also shows that the landowners paid one-fifth of their yearly harvested rice crop to United and its successors as payment for the water used to irrigate their rice crops. Under these circumstances, it is clear that United did not need fee title to the strip of land in question but that a servitude or right of way for canal purposes was sufficient.
As to assessment and payment of taxes, a joint stipulation of facts entered into the record reflects that, "Since 1910, the Plaintiffs and their ancestors in title have paid all property taxes for the property comprising the canal. The canal company also paid taxes on the canal system which included the strip of canal involved in this litigation." In addition to this stipulation, plaintiffs introduced in evidence a certified letter from the Vermilion Parish Sheriff's Office confirming that property taxes were paid by plaintiffs and their ancestors in title on their 40 acre tract of land "including that portion of the described property used as the canal right-of-way and the right-of-way for the public road." Also introduced into evidence was a copy of the 1981 "Movables" Assessment Roll for Vermilion Parish. AVICO was assessed thereunder for a seven mile lateral canal and 247 acres in Vermilion Parish.
The sixth factor to consider is whether the grant made in the instrument was for a specific purpose. As is clear from the language of the instrument, the purpose of the conveyance was for the construction of an irrigation canal. Although the instrument is ambiguous as to the exact arrangement between Broussard and United regarding payment for waters from the canal (due to the two deleted paragraphs in the instrument), it remains clear that both parties anticipated and relied upon the construction of an irrigation canal.
Whether the grant was made "in perpetuity" or "forever" is not a vital factor in the instant case, as it has been in previous cases. Such inquiry is sometimes significant because, according to settled jurisprudence, a grant "in perpetuity" connotes only a limited grant, whereby a grant "forever" connotes an unlimited grant and a sale in fee simple. Esso Standard Oil Company v. Texas & New Orleans Railroad *1009 Company, 127 So.2d 551 (La.App. 3rd Cir.1961); Noel Estate, Inc. v. Kansas City Southern & Gulf Ry. Co., supra; Meaux v. Southdown Lands, Inc., supra. In our case, the following language was included in the printed text of the document, "To Have and To Hold the said described property herein conveyed, unto the said purchaser, its heirs, successors or assigns forever..." Since this was simply the standard phraseology used in cash sale forms and not specifically included by the parties, we do not infer any particular meaning from such language. It is not uncommon for owners of land to use the language and form generally used in a sale of realty when granting servitudes. The determinative language is found in the qualifying clauses added to the general form, designating the intended servitudes.
The final consideration is how the parties to the conveyance, or their heirs and assigns, have treated the conveyance. Unfortunately, it is impossible to ascertain exactly what Francois Broussard intended when he entered into the contract with United. Available records reflect that he paid taxes on the entirety of his property, including that part upon which the canal was situated, from the time of the conveyance until he disposed of the property in 1921. The records also reveal that his sons and all subsequent owners of the property did likewise.
Also contained in the record is a copy of the deed whereby Francois Broussard conveyed the 40 acre tract now owned by plaintiffs to his sons, Emile and Adam Broussard, on April 4, 1921. There is no mention in the deed of United's ownership of a strip of land traversing the property conveyed. Also, when Emile Broussard transferred his interest in the 40 acre tract to Eloi C. Harrington on March 1, 1931, there is no mention of United's or its successor's ownership of any part of said property. Euphemie Harrington thereafter acquired the 40 acres through Eloi's succession on October 1, 1932. Again, the property is described with no mention of any other party owning a strip of land traversing same. Plaintiffs acquired the property on March 22, 1971 by act of donation from Euphemie Harrington, their mother. The property is described with no mention of ownership by AVICO.
The deposition of Weston J. Porter, Sr., one of the plaintiffs herein, was received in evidence. In his deposition, Porter recalled the construction of the canal when he was about four years old. He testified that, since he acquired ownership of the property in 1971, he paid 20% of the proceeds from his rice crops to the defendant canal company. He recalled the same arrangement transpiring when he was a teenager, working on the farm. He stated that back then, every fifth sack of rice which came out of the threshing machine was stacked separately from the rest of the crop for payment to the canal company for use of their water. Porter testified that all who farmed the property were obligated to use the water from the canal. Porter also stated that the strip of land on which the canal was built was always considered part of the land which he and his ancestors in title owned. He testified that the strip has never been distinguished as an independent strip of land owned by anybody but the Harringtons or their predecessors. He also testified that the canal is fenced in with the remainder of the 40 acres and that such fences have always been maintained by plaintiffs and their predecessors in title.
The evidence also revealed that Iris Hebert, who farms the property for the Porters, has maintained the levees since defendant ceased operating the canal in 1980. Hebert stated in deposition that he continues to poison around the levees of the canal so that the briers and trees would not grow over it.
While we are unable to determine the intentions of the parties from the language of the instrument as a whole, when construing the instrument in connection with the extrinsic evidence in the record, we conclude that the parties to the deed intended the conveyance of only a servitude or right of way. The consideration cited in the instrument, the lack of United's need *1010 for fee title to the property, the fact that plaintiffs and their ancestors in title continued to treat the entirety of the 40 acres as their own, and the stated purpose of the instrument all lead us to the conclusion that only the conveyance of a servitude was intended by the agreement.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside. It is now ordered that there be judgment in favor of plaintiffs, Weston J. Porter, Sr. and Hazel Porter, and against Acadia-Vermilion Irrigation Co., Inc., decreeing plaintiffs to be the owners in fee of the disputed strip of land as described in the deed between Francois Broussard and United Irrigation and Rice Milling Company insofar as it traverses the following described property:
"Forty (40) acres, being the north half of the northeast quarter of the southeast quarter of Section 16, and the north half of the northwest quarter of the southwest quarter of Section 15, Township 13 South, Range 2 East, designated as Lot 2A of plat attached hereto."
Defendant, Acadia-Vermilion Irrigation Co., Inc., is to pay all costs of these proceedings both at the trial level and on appeal.
REVERSED AND RENDERED.
NOTES
[1] La.C.C. Art. 1945 was amended and re-enacted by Acts 1984, No. 331, effective January 1, 1985. The substance of Art 1945 was reproduced in La.C.C. Arts. 2045 and 2046.
[2] We calculate the area purportedly conveyed to United as containing a total of 9.09 acres. The strip is 100 feet wide and approximately 3,960 feet in length. 396,000 square feet divided by 43,560 square feet (square feet per acre) = 9.09 acres.