# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-999


**KEYSTONE ENERGY COMPANY, LLC**

**VERSUS**

**DENBURY ONSHORE, LLC, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-501-11
HONORABLE C. STEVE GUNNELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**DAVID KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and David Kent Savoie, Judges.


**REVERSED AND REMANDED.**

**Jacque B. Pucheu, Jr.**
**Pucheu, Pucheu & Robinson, LLP**
**106 Park Avenue**
**P. O. Box 1109**
**Eunice, LA 70535-1109**
**(337) 457-9075**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Union Pacific Railroad Company**
     **Keystone Energy Company, LLC**

**John H. Pucheu**
**Pucheu, Pucheu & Robinson, LLP**
**106 Park Avenue**
**P. O. Box 1109**
**Eunice, LA 70535-1109**
**(337) 457-9075**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Union Pacific Railroad Company**
     **Keystone Energy Company, LLC**

**J. Michael Fussell, Jr.**
**Gordon, Arata, McCollam, Duplantis & Eagan, LLC**
**400 E. Kaliste Saloom, Ste. 4200**
**P. O. Box 81829 (70598-1829)**
**Lafayette, LA 70508**
**(337) 237-0132**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Denbury Onshore, LLC**
     **Hilcorp Energy Company**

**Julie Deshotels Jardell**
**Gordon, Arata, McCollam, Duplantis & Eagan, LLC**
**400 E. Kaliste Saloom, Ste. 4200**
**P. O. Box 81829 (70598-1829)**
**Lafayette, LA 70508**
**(337) 237-0132**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Hilcorp Energy Company**
     **Denbury Onshore, LLC**

**Robert T. Jorden, Jr.**
**The Jorden Firm, LLC**
**675 Little Chenier Road**
**Creole, LA 70632**
**(337) 288-0308**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Hilcorp Energy Company**
     **Denbury Onshore, LLC**

**David Paul Bruchhaus**
**Mudd & Bruchhaus, LLC**
**410 E. College Street**
**Lake Charles, LA 70605**
**(337) 562-2327**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Arlene Thevis Daboval**
    **Jada Simar Daboval**
    **Rene Joseph Daboval**
    **Shannon Martin Daboval**

**SAVOIE, Judge.**

This appeal involves competing claims to mineral rights on property located in Jefferson Davis Parish. Denbury Onshore, LLC ("Denbury") and Hilcorp Energy Company ("Hilcorp") appeal a partial summary judgment rendered in favor of Keystone Energy Company, LLC ("Keystone") and Union Pacific Railroad Company ("Union Pacific") recognizing that a 1904 notarial act transferred title in the subject property to Union Pacific's predecessor, and therefore, Union Pacific and its mineral lessee, Keystone, exclusively own the mineral rights on the subject property. As a result of this finding, the trial court also awarded Keystone in excess of $500,000.00 that Denbury and Hilcorp generated from oil and gas production on the subject property and deposited into the registry of the court in connection with a concursus proceeding. Because we find an issue of material fact as to whether the 1904 transferred fee title or a servitude, we reverse the trial court's judgment and remand the matter for further proceedings.

## FACTUAL BACKGROUND

Pursuant to a notarial act dated March 4, 1904 ("the 1904 instrument"), Southwestern Rice and Canal Company ("Southwestern") conveyed an interest in six and 29/100 acres of property, which was then located in Calcasieu Parish, to Louisiana Western Railroad Company ("LWRC").

According to the parties, three copies of the 1904 instrument exist. A handwritten version of the document was filed in Orleans Parish on March 7, 1904. In addition, a typed-copy of the document was recorded in Calcasieu Parish's conveyance records on March 10, 1904, and appears in Book 58, No. 297. Keystone and Union Pacific also suggest that the same handwritten version that

was filed in Orleans Parish was also filed in Calcasieu Parish; however, the Calcasieu Parish records were destroyed by the fire of 1910.

An identical version of the typed-copy of the document originally indexed in the Calcasieu Parish conveyance records also appears in the Jefferson Davis Parish conveyance records as a result of Jefferson Davis Parish being carved out of Calcasieu Parish. Currently, the conveyance records of both Calcasieu Parish and Jefferson Davis Parish include the typed-copy of the 1904 instrument recorded in Calcasieu Parish on March 10, 1904. A copy of the handwritten version, obtained from Orleans Parish, was also recorded in Jefferson Davis Parish on March 3, 2010.

The handwritten and typed-copies of the 1904 instrument are essentially identical; however, the typed-copies include the following caption to the left of the text of the document:

No. 297, Bk. 58
S.W. Rice & Canal Co. LTD.
            To
La. Western R. R. Co.
Right of Way

This caption, or title, is not included in the language of the 1904 instrument typed to the right of the caption. Moreover, the handwritten version of the instrument does not contain such a caption.[1]

*Keystone's and Union Pacific's Position*

According to Appellees Keystone and Union Pacific, the 1904 instrument was a gratuitous donation of fee title to LWRC, who was Union Pacific's predecessor. They contend that Union Pacific and/or its predecessors, including

---

[1] The handwritten and typed-copies of the 1904 instrument also vary in that a tinted plat is included with the handwritten version filed in Orleans Parish, but not with the typed-copies; and the typed-copies contain the following additional language: "A true copy of the original on file in my office New Orleans, La. March 7th A.D. 1904. Andrew Hero. Not. Pub. Filed March 8th. 1904. RECORDED MARCH 10th. 1904. (SIGNED). O.J. GIL. DEPUTY CLERK AND EX-OFFICIO RECORDER."

2

LWRC, took possession of the property as owners and maintained physical control and possession of the property without interruption until Union Pacific sold the property in 1999, with a reservation of mineral rights.[2]

Pursuant to a "Quitclaim Deed" dated November 2, 1999, Union Pacific purported to convey to Rene Daboval, Arlene Daboval, Shannon Daboval, and Jada Daboval ("The Dabovals") the same property identified in the 1904 instrument, as well as additional acreage said to have been acquired by Union Pacific and/or its predecessors as the result of Jefferson Davis Parish Police Jury's abandonment of certain streets. The Quitclaim Deed further stated that Union Pacific was reserving all mineral rights to the property. The Dabovals paid $15,000 for the property, which, according to Keystone and Union Pacific, consisted of 7.02 acres. The Quitclaim Deed was recorded in Jefferson Davis Parish on November 8, 1999.

On November 1, 2009, Union Pacific and Keystone executed a written "Notice of Execution of Oil, Gas and Mineral Lease[,]" which stated the effective date was July 22, 2005. The lease affected "[t]hat certain parcel of land containing 7.02 acres, described in the . . . [Quitclaim Deed], dated November 2, 1999,"

_____

[2] In their memorandum in support of their motion for partial summary judgment, Keystone and Union Pacific asserted that "the Railroad completed its depot within three months after the March, 4, 1904 donation[,]" and,

> [I]n addition to railroad activities and the activities of its employees at the depot and on the adjacent switch track, the Railroad exercised ownership and possession over the original 6.29 acres by signing various contracts granting rights to use the surface and minerals of the Depot Tract and the areas above and below the Depot tract. The Railroad indirectly possessed this land through the activities of it[s] lessees and other parties who were granted permission by the Railroad to use the Depot Tract.

> Keystone and Union Pacific also refer to various contracts authorizing overhead telephone lines, contracts authorizing installation pipelines below the property, mineral leases including the land under the property, and "two surface leases covering the parts of the tract flanking the area around the depot."

including "the tract of land acquired by Louisiana Western Railroad Company from Southwestern Rice and Canal Co., Ltd., by . . . [the 1904 instrument]." The Notice was recorded in Jefferson Davis Parish on February 9, 2010.

According to Keystone and Union Pacific, Union Pacific's mineral reservation servitude was interrupted on February 25, 2005, when Denbury spudded a well on the subject property. Denbury and Hilcorp admit that on February 25, 2005, Denbury spudded the Petijean Tr et al 8 No. 1 Well (Serial No. 230926), and that by order from the Louisiana Office of Conservation, the well was established as the unit well for MT RA SUA, consisting of 900 acres. The subject property is reflected in Tract 62 of a plat of the unit dated March 9, 2006. They also admit that, "[o]n June 4, 2010, Well No. 23807 operated by Hilcorp was recompleted in the MARG H2 RN SUB created by order of the Louisiana Office of Conservation." The June 30, 2010 plat for Tract 27 of this unit depicts 2.489 acres of the subject property.

Denbury and Hilcorp were assignees of a mineral lease executed between the Dabovals and Suncoast Land Services, Inc., which was recorded on September 14, 2004, in Jefferson Davis Parish. Suncoast assigned its rights to Denbury on October 21, 2004, and the assignment was recorded in Jefferson Davis Parish on January 26, 2005. On August 1, 2007, Denbury assigned its interest in the lease to Hilcorp, and the assignment was recorded in Jefferson Davis Parish on January 22, 2008. The original lease, and subsequent lease assignments, affect the following property:

> That certain tract or parcel of land containing 0.19 acres, more or less, being situated in Section 8, Township 11 South, Range 4 West, Jefferson Davis Parish, Louisiana, and being designated as Lot Four (4) of Block Thirty-Six (36) of the Thornwell Townsite (unincorporated) inclusive of ½ of the abandoned Stubbs Streets,

4

adjacent thereto, and being more specifically described and identified in [the 1999 Quitclaim Deed between Union Pacific and the Dabovals.]

Union Pacific and Keystone suggest that, because Union Pacific is the owner of the subject mineral rights, and Keystone is its mineral lessee, they have the exclusive rights to any and all minerals to the property, despite the recorded leases involving Denbury and Hilcorp, and therefore Denbury and Hilcorp owe damages as a result of their operations.

*Denbury's and Hilcorp's Position*

Appellants Denbury and Hilcorp contend that the 1904 instrument transferred only a right of way servitude, and not fee title, in the subject property to LWRC. It is their position that, even though Union Pacific did not own the subject property in 1999, when it purported to sell the property to the Dabovals pursuant to the Quitclaim Deed, the Dabovals nonetheless acquired full ownership of the property, including the mineral rights, through ten-year acquisitive prescription. They suggest that, because Union Pacific and/or its predecessors did not have title to the subject property, Union Pacific had no right to reserve the mineral rights in connection with the 1999 sale and, therefore, the reservation of rights is without effect.

Denbury and Hilcorp submitted to the trial court that the Dabovals exercised possession of the mineral rights through Denbury's and Hilcorp's operations on the property as mineral lessees, and that "[a]s possessors of the mineral rights, the Dabovals are entitled to any proceeds emanating therefrom[.]" They also submitted that they are entitled to seventy-five percent of the proceeds from their operations on the property in accordance with the provisions of the mineral leases.

## PROCEDURAL HISTORY

On July 3, 2011, Keystone filed the instant action against Denbury and Hilcorp. On June 15, 2012, an "Amended and Restated Petition" was filed naming both Keystone and Union Pacific as plaintiffs. The amended petition seeks, among other things, a judgment awarding Plaintiffs "in proportions established by their lease, an amount equal to the amount that [Denbury and Hilcorp] . . . received from the sales of all oil, gas, and other hydrocarbons produced from the [subject property]" under La.R.S. 30:10[3] and La.Civ.Code arts. 2292-2297. The petition also seeks "statutorily imposed damages" and attorney fees provided by La.R.S. 31:212.23.C.

In response, Denbury and Hilcorp filed an answer and "Reconventional Demand Invoking Concursus" stating that they were depositing into the registry of the court "the sum of $500,343.63 which is the Disputed Interest from the date of first production through July 2011, and in the future, [will] deposit all sums that may accrue to the Disputed Tracts (less and except well costs)[.]" The concursus proceeding identified and named four groups of defendants: Union Pacific and Keystone ("the Keystone Claimants"); The Dabovals; "The Petijean Claimants," who subsequently dismissed their claims in the concursus proceedings; and "The Victoria/Southwestern Claimants," who were two liquidated corporations that were never served.

---

[3] La.R.S. 30:10(A)(3) states:

> If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.

On September 24, 2014, Denbury and Hilcorp filed a "Second Reconventional Demand" asserting that, in the event the relief sought by Keystone and Union Pacific is granted, they are entitled to damages due to an alleged misrepresentation by an agent of Union Pacific in 2004, indicating that Union Pacific owned no mineral rights in the subject property. They also seek reimbursement for their proportionate share of well costs and other expenses they incurred in connection with their operations on the property, "including recovery of a risk fee pursuant to [La. R.S. 30:10.]"

Keystone and Union Pacific then filed a motion for partial summary judgment in connection with the concursus proceeding wherein they argued that Union Pacific owns the mineral rights to the subject property, and therefore Keystone, as Union Pacific's mineral lessee, is entitled to the proceeds generated by Denbury and Hilcorp and deposited into the registry of the court. They also sought judgment recognizing that Keystone and Union Pacific are the only defendants named in the concursus proceeding who have any ownership interest in the minerals rights at issue.

Denbury and Hilcorp filed a cross-motion for partial summary judgment asserting that the Dabovals owned the mineral rights to the subject property through acquisitive prescription, and that, in accordance with the Dabovals' mineral lease, the Dabovals were entitled to 25% of the funds deposited into the court's registry, and Denbury and Hilcorp together were entitled to the remaining 75% of the funds.

A hearing on the cross-motions for partial summary judgment was held on April 7, 2015. The central issue presented to the trial court was whether the 1904 instrument was a transfer of fee title or a transfer of a right of way servitude.

7

Therefore, based upon the arguments submitted to the trial court, the parties seemed to have agreed that if, in fact, the 1904 instrument was a transfer of fee title, then Union Pacific was owner of the mineral rights, and Keystone as Union Pacific's lessee, was entitled to the funds deposited into the court's registry.

Ultimately, the trial court rendered partial summary judgment in favor of Union Pacific and Keystone recognizing that the 1904 instrument was a transfer of fee title in the subject property. As a result of this finding, the trial court also rendered judgment recognizing that Keystone was entitled to the funds deposited into the registry of the court, and that Keystone and Union Pacific were the only defendants to the concursus proceeding with any ownership interests in the minerals in or under the property. The judgment was certified as final pursuant to La.Code Civ.P. art. 1915(B).

Denbury and Hilcorp appeal the trial court's ruling asserting the following assignment of errors.[4]

> 1. The trial court erred, as a matter of law, in granting Plaintiffs' Motion for Partial Summary Judgment by taking into consideration the . . . [handwritten version] of the 1904 Instrument that was not recorded in Jefferson Davis Parish until March 3, 2010, being subsequent to Union Pacific disclaiming ownership in the Subject Property and there being lease coverage over the subject property.

> 2. The Trial Court erred, as a matter of law, in granting Plaintiffs' Motion for Partial Summary Judgment by finding that the . . . [handwritten version] of the 1904 Instrument was the donation of fee title and not a right of way servitude, and erred by not ruling that the . . . [typed-versions] of the 1904 Instrument was the grant of right of way servitude.

> 3. If the Trial Court did not err in considering the . . . [handwritten version] of the 1904 Instrument, then because of the cloud on title

---

[4] We do not consider whether the recorded Daboval lease and lease assignments have any effect on entitlement to the funds deposited into the trial court's registry, even if the 1904 instrument was a transfer of fee title, as that issue was not submitted to the trial court or raised on appeal.

created by . . . [the handwritten version], it erred in not examining the extrinsic factors established *via* Louisiana jurisprudence utilized in determining whether a transfer is a right of way servitude or fee title.

## ANALYSIS

The standard of review of a summary judgment to be employed by this court is as follows:

> Courts of appeal review summary judgments de novo applying the same analysis as the trial court. Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966 provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

*Berard v. Home State Cnty. Mut. Ins. Co.*, 11-1372, p. 2 (La.App. 3 Cir. 5/9/12), 89 So.3d 470, 471-72 (citations omitted).

## ASSIGNMENT OF ERROR NO. 1

In their first assignment of error, Denbury and Hilcorp argue that, under the public records doctrine, the trial court erred in finding that the handwritten version of the 1904 instrument had effect as to them as third-parties because it was not filed in the Jefferson Davis Parish records until March 3, 2010, which was after the Daboval lease was recorded in 2004.

However, it appears from the record that the trial court simply disregarded the caption of the typed-copies filed in both Calcasieu Parish and Jefferson Davis Parish as not being part of the original agreement between the parties. There is no basis upon which to conclude that the notation of "right of way" appearing on the typed-copies directly beneath the book and entry number, or the language of the

9

conveyance appearing to the right of the caption, was not typed by the parish recorder or clerk in accordance with his duty to immediately record, or inscribe, all notarial acts deposited in the parish recorder's office. *See Albert Hancon Lumber Co. v. Baldwin Lumber Co.*, 130 La. 849, 58 So. 638 (1911). Moreover, the language to the right of the caption is identical to the language appearing in the handwritten version. Therefore, we find there is no issue of material fact that the notation of "right of way" is not part of the agreement between Southestern and LWRC.

There is no dispute that the 1904 document was inscribed and recorded in the Calcasieu Parish records, where the subject property was originally located, on March 10, 1904. Therefore, the substantive language contained therein transferring an interest in the subject property, which is identical to the language in the handwritten version, has effect as to third parties after that date. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 2

In its second assignment of error, Denbury and Hilcorp suggest that the 1904 instrument itself unambiguously reflects an intent to convey a right of way servitude rather than fee title.

Interpretation of the 1904 instrument is governed by the following principles:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." "Interpretation of a contract is the determination of the common intent of the parties." The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a

10

clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance."

*Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279 (citations omitted).

A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.

*Campbell v. Melton*, 01-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 75.

When a contract is to be interpreted by the court as a matter of law, a motion for summary judgment is a proper procedural vehicle to present the question to the court. . . .

However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic (parol) evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes, in part, a question of fact. In this posture, the granting of a summary judgment is appropriate only if "there is no genuine issue as to material fact . . ."

. . . As a general rule, a motion for summary judgment ". . . is *rarely* appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith." (Emphasis added). Thus, in motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often there are conflicting affidavits concerning the intent of the parties and granting a summary judgment is not appropriate. However, even though granting a summary judgment based on an intent issue may be rare, it can be done when there is no issue of material fact concerning the pertinent intent.

*Carter v. BRMAP*, 591 So.2d 1184, 1188-89 (La.App. 1 Cir. 1991) (footnote omitted)(citations omitted).

First, as noted above, the notation of "right of way" included in the caption prepared by the clerk in connection with indexing the document, is not part of the

11

agreement between the parties, and therefore is not considered when interpreting the language within the four corners of the document.

The relevant language of the 1904 instrument states as follows (emphasis added):

> Be it known that on this Fourth day of March, in the year of our Lord one thousand nine hundred and four . . . . President Feiblemen [president of Southwestern Rice and Canal Company] declared that whereas the Louisiana Western Railroad Company . . . is about to construct a branch railroad known as the "LACASSINE BRANCH", **which will pass through the lands of said "South Western Rice and Canal Company, Limited", and give an enhanced value to its Lands.** Now therefore, in consideration of the advantages to be derived **from the construction of said LACASSINE BRANCH RAILROAD and the increased value that will accrue to its lands**, as also, in consideration of the sum of One Dollar Cash in hand paid by said "Louisiana Western Railroad Company["] . . . said Feibleman . . . declared that he does by these presents, **give, grant, convey, assign and set over unto the said "Louisiana Western Railroad Company["] . . . the following strip or parcel of land, situated** . . . in the Parish of Calcasieu . . . and described as follows, vix:-
>
> A tract or portion of ground in the Town of Thornwell on the line of the "LACASSINE BRANCH", of said Louisiana Western Railroad in Calcasieu Parish, Louisiana, being part of Section No. Eight, Township Element, South Range No. Four West, **adjoining the North side of right of way previously conveyed for said "LACASSINE BRANCH"[.]** The said parcel of land hereby conveyed being more particularly described as follows, to wit:- Beginning at a point on the east line of the Thornwell town-site, which point is fifty feet at right angles from the centre line of the said "LACASSINE BRANCH" on the North side thereof; thence in a norther--- direction along the East line of said townsite One hundred feet for corner which is One hundred and fifty feet at right angles from the center of said "LACASSINE BRANCH"; thence in a Westerly direction parallel with said branch and One hundred and fifty feet North therefrom Twenty-Seven hundred and forty feet to a point in the West line of said Town-site; thence South along said West line One hundred feet to corner **in the North Line of the Right of Way of said "LACASSINE BRANCH"**; **thence in an Easterly direction along said Right of Way line** which is fifty feet from and parallel to the centre of said "Branch-Rail-Road["] Twenty seven hundred and forty feet to the place of beginning, and containing Six 29/100 acres. . . . And here appeared . . . Thornwell Fay . . . Superintendent of said "Louisiana Western Railroad Company["], and

in its name and behalf hereby accepts these presents. The certificate of Mortgages is dispensed with, that is otherwise required by the laws of this State for annexation hereto. From the Clerk of Court and Ex-Officio Recorder of Mortgages of and for the Parish of Calcasieu to show what if any mortgages or other incumbrances may exist against the herein described and conveyed lands.

The document's language indicating that a parcel or strip of land, is being "give[en], grant[ed], convey[ed], assign[ed] and set over," as well as the language describing that land with specific measurements, could reflect an intent to convey title in the property; however, we find that the instrument's language reflecting the purpose of the conveyance and the consideration given creates an ambiguity as to the parties' intent. [5]

The instrument reflects that the purpose of the conveyance is that LWRC is constructing a branch railroad "that will pass through" Southwestern's lands. Similarly, the instrument reflects that because the railroad will pass through Southwestern's lands, the value of Southwestern's lands will increase. That increased value is stated as part of the consideration for the conveyance. The use of the language "pass through" Southwestern's lands could reasonably suggest an intent for Southwestern to retain ownership of the land while only allowing LWRC's railroad to pass through it. Moreover, a stated consideration of $1.00 has been found to be out of proportion of the value of similar sized land and, therefore, reflect an ambiguity as to intent. *Porter v. Acadia-Vermillion Irr. Co., Inc.*, 479 So.2d 1003 (La.App. 3 Cir. 1985), *writ denied*, 483 So.2d 1019 (La.1986).

We, therefore, find that the instrument itself is ambiguous as to whether the parties intended to convey title or a servitude and extrinsic evidence should be considered.

---

[5] *See King v. Strohe*, 95-656 (La. App. 3 Cir. 5/8/96), 673 So.2d 1329, for relevant factors reflected in the body of the instrument.

## ASSIGNMENT OF ERROR NO. 3

In its third assignment of error, Denbury and Hilcorp suggest that the extrinsic evidence presented undisputedly shows that the parties intended to transfer a servitude and not title.

Louisiana courts consider extrinsic evidence related to the following factors when the instrument itself is ambiguous as to whether it conveys a right of way or fee title:

1.  The consideration recited in the deed;

2.  Whether a specific measurement was given to the "right of way";

3. Whether the party claiming the fee title had an actual need for such title;

4. To whom the property was assessed and who paid the taxes on the property;

5. Whether the grant was made for a specific purpose;

6. Whether the grant was made "in perpetuity" or "forever";

7. How the parties to the conveyance, or their heirs and assigns, have treated the property.

*King*, 673 So.2d at 1336.

In support of their argument, Denbury and Hilcorp refer to (1) other conveyances between the same parties on the same date; (2) a 2004 correspondence from Union Pacific suggesting that it only had servitude interest in the property; and (3) contradictory, or inconclusive, evidence as to whether Southwestern or LWRC were assessed or paid property taxes in connection with the subject property.

In response, Keystone and Union Pacific argue that "after the execution of the 1904 Instrument, both LWR[C] and Southwestern acted in a manner showing

14

they treated the 1904 Instrument as a conveyance in fee title." They refer to (1) various notarial acts by Southwestern and Victoria Land And Canal Co., Inc., who they describe as "a related corporation that bought all of Southwestern's assets," including a sale wherein the subject property was omitted from the description of the property acquired by Victoria Land; (2) the railroad's granting of mineral leases, surface leases, and pipeline permits; (3) and Union Pacific's 1999 sale of the property to the Dabovals. They also argue that the 2004 correspondence from Union Pacific was from an unauthorized representative and not reflective of its position.

As reflected above, there are issues of material fact concerning whether the parties to the 1904 instrument intended to convey fee title or a servitude, as reflected in the language of the document itself, as well as the conflicting evidence presented by the parties, thereby precluding summary judgment on the issue. Therefore, we reverse, in its entirety, the trial court's partial summary judgment in favor of Union Pacific and Keystone and remand the matter for further consideration. Costs of this appeal are assessed to Appellees Union Pacific Railroad Company and Keystone Energy Company, LLC.

**REVERSED AND REMANDED.**